# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

　　　　　Plaintiff,

vs.　　　　　　　　　　　　　　　　　　　　No. CR 14-1065 JB

LESLIE CHAPMAN,

　　　　　Defendant.

## UNSEALED MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before Court on the United States' Motion *In Limine*, filed October 23, 2014 (Doc. 63)("Motion").  The Court held a hearing on October 28, 2014.  The primary issues are: (i) whether the Court should permit Defendant Leslie Chapman ("L. Chapman") to introduce evidence at trial that Dana Chapman ("D. Chapman") was convicted of theft by check over ten years ago; (ii) whether the Court should permit L. Chapman to introduce evidence at trial that D.  Chapman allegedly stole items from their house in Abilene, Texas; (iii) whether the Court should permit L. Chapman to introduce evidence at trial that D. Chapman allegedly stole checks and cashed them; and (iv) whether limiting L. Chapman's cross-examination of D. Chapman violates his rights that the Sixth Amendment to the Constitution of the United States of America protects.  Because the probative value of the theft-by-check convictions substantially outweighs their prejudicial effect, the Court will permit

---

[1] In its Sealed Memorandum Opinion and Order, filed March 5, 2015 (Doc. 63)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO.  Sealed MOO at 1 n.1.  The Court gave the parties 14 calendar days to provide notice of any proposed redactions.  See Sealed MOO at 1 n.1.  The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions.  Consequently, the Court is now re-filing the Sealed MOO in its unsealed form.

L. Chapman to introduce evidence of D. Chapman's theft-by-check convictions.  Additionally, because evidence of the alleged stolen checks is probative of D. Chapman's character for untruthfulness, the Court will permit L. Chapman to ask her about the incident on cross-examination.  The Court will not, however, permit L. Chapman to introduce evidence that D. Chapman allegedly stole items from their house in Abilene.  Theft, by itself, does not involve conduct that is probative of untruthfulness.   Prohibiting this line of questioning on cross-examination does not violate L. Chapman's Sixth Amendment rights, because the evidence is irrelevant and would, if it has any probative value, attack only D. Chapman's general credibility, and L. Chapman has other appropriate means to attack D. Chapman's credibility.  The Court will thus grant the Motion in part and deny it in part.

## FACTUAL BACKGROUND

The Amended Information alleges that L. Chapman, on or about January 26, 2014, "unlawfully touch[ed] and appl[ied] force to the person of a household member[, his wife -- D. Chapman --] with intent to injure that person" at the "Veterans Affairs Medical Center in Bernalillo County, in the District of New Mexico."  Amended Information at 1, filed April 4, 2014 (Doc. 12)("Amended Information").   In doing the "unlawful touch[ing]," L. Chapman allegedly caused D. Chapman "temporary disfigurement and temporary loss and impairment of the function of" a "member of the [person's] body."  Amended Information at 1.  The Amended Information also alleges that L. Chapman prevented, obstructed, and delayed the "sending, transmitting, conveying and delivering" of a "message, communication and report by and through telephone."  Amended Information at 1-2.  The Amended Information further alleges that L. Chapman knowingly possessed and carried a firearm "on the property of the Veterans Affairs Medical Center, Albuquerque, with no official purpose."  Amended Information at 1.

## PROCEDURAL BACKGROUND

Plaintiff United States of America filed the Motion on October 23, 2014 -- six days before trial was set to start.  See Motion at 1.  See Order to Continue Trial at 2, filed October 10, 2014 (Doc. 52)("Order to Continue")(setting trial to start on October 29, 2014).  The United States requests that the Court issue an order in limine, prohibiting L. Chapman from introducing certain evidence and from cross examining D. Chapman about certain information.  See Motion at 1.  Specifically, the United States requests that the Court prohibit L. Chapman from cross-examining D. Chapman about: "three prior, misdemeanor charges that are more than ten years old," and about "allegations of theft after the incident that gave rise to this case."  Motion at 1 (emphasis removed).

### 1.      The Relevant Incidents.

The United States requests that the Court prohibit L. Chapman from asking D. Chapman, on cross-examination, about three prior misdemeanor charges and about two allegations of recent theft.  See Motion at 1.  The three misdemeanor charges include a misdemeanor theft-by-check charge against D. Chapman, which was dismissed on May 18, 2001.  See Motion at 1.  This charge was for theft by check of more than $20.00 but less than $500.00.  See Motion at 1.  The second charge is also a misdemeanor theft-by-check charge of more than $20.00 but less than $500.00 from 2002.  See Motion at 1-2.  D. Chapman received a deferred adjudication for this charge and it was disposed on June 13, 2003.  See Motion at 1-2.  The third misdemeanor is a theft-by-check charge from 2003.  See Motion at 2.  This charge was also for more than $20 but less than $500 and the disposition date was on June 13, 2003.  See Motion at 2.  D. Chapman received 180 days of probation for that charge.

The theft allegations arise from events that occurred on January 26, 2014, see Motion at 2, and on January 31, 2014, see Mr. Chapman's Sealed Supplemental Response to the Prosecutions' Motion *In Limine* at ¶ 3, at 2, filed October 28, 2014 (Doc. 63)("Chapman Supp."). On January 26, 2014, D. Chapman removed personal belongings from the house that she and L. Chapman lived in while married.  See Motion at 2.  These belongings include a computer and peripherals, a firearm, a silver necklace, a GPS device, a set of crystal glasses, place settings, and a diamond ring.  See Chapman Supp. ¶ 2, at 2.  On January 31, 2014, D. Chapman cashed checks from L. Chapman's and D. Chapman's joint back account.  See Motion at 2.  L. Chapman contends that on January 31, 2014, at 9:00 a.m., he removed D. Chapman's signatory authority from the account.  See Chapman Supp. ¶ 3, at 2.  The checks were cashed at Ace Check Cashing in Abilene.  See Mr. Chapman's Sealed Response to the Prosecution's Supplement to Motion *In Limine* ¶ 1, at 1, filed October 29, 2014 (Doc. 79)("Supp. Response").

     **2.**    **The Briefs.**

The United States argues that character evidence is generally limited to opinion and reputation evidence but that on cross-examination questions concerning specific instances of conduct may be asked to rebut a character witness' opinion concerning the character trait about which the witness testified.  See Motion at 2.  The United States argues that ruled 608 of the Federal Rules of Evidence prohibits the use of specific instances of conduct to attack a witness' character for truthfulness, except in two instances: (i) rule 609 of the Federal Rules of Evidence allows evidence of prior convictions, when the crime involves proof of a dishonest act or false statement, or where the crime was a felony; and (ii) rule 608(b) of the Federal rules of Evidence allows questions on cross-examination about specific instances of conduct if they are probative to the character for untruthfulness or untruthfulness.  See Motion at 3.  The United States

contends that under rule 608(b) courts have limited cross-examination to circumstances where the act involved a falsehood or deception or was an act in which the witness sought personal gain by taking from another.  See Motion at 3 (citing United States v. Ojeda, 23 F.3d 1473 (8th Cir. 1994); United States v. Chevalier, 1 F.3d 581 (7th Cir. 1993); United States v. Waldrip, 981 F.2d 799 (5th Cir. 1993); United States v. Manske, 186 F.3d 770 (7th Cir. 1999)).

The United States notes that rule 608(b) was amended in 2003 to clarify that rule 608(b) prohibits extrinsic evidence when the sole reason for proffering the evidence is to attack or support a witness' character for truthfulness.  See Motion at 4.  The United States argues that this is what L. Chapman is attempting to do.  See Motion at 4.  The United States argues that rule 608(b) provides district courts with discretion and that it does not require a court to allow every bit of negative evidence against a witness to be introduced.  See Motion at 4 (citing United States v. Lafayette, 983 F.2d 1102 (D.C. Cir. 1993).  The United States also contends that a district court can preclude questions on cross-examination about specific instances of conduct when the question would result in a mini-trial.  See Motion at 4 (citing United States v. Beltran-Garcia, 338 F. App'x 765 (10th Cir. 2009)(unpublished)).  The United States contends that in United States v. Beltran-Garcia, the United States Court of Appeals for the Tenth Circuit affirmed a district court's decision to preclude certain questions on cross-examination of a police officer, because "'the restrictions in rule 608 exist to prevent mini-trials on side issues that make it more difficult for the jury to render an impartial decision.'"  Motion at 5 (alterations omitted)(quoting United States v. Beltran-Garcia, 338 F. App'x at 772).  The United States also quoted a portion of the advisory committee notes that the Tenth Circuit quoted in United States v. Beltran-Garcia, which states that rule 608(b) is subject to possible abuse, that specific instances of conduct should not be too remote in time, and that rule 403 of the Federal Rules of Evidence requires the

unfair prejudice of the evidence to not substantially outweigh its probative value.  See Motion at 5 (quoting United States v. Beltran-Garcia, 338 F. App'x at 771).  The United States contends that rule 608(b) is subject to rule 403's balancing test.  See Motion at 5 (citing Telum, Inc. v. E.F. Hutton Credit Corp., 859 F.2d 835 (10th Cir. 1988); United States v. Mangiameli, 668 F.2d 1172 (10th Cir. 1982)).  The United States also contends that rule 611 of the Federal Rules of Evidence prohibits harassing and unduly embarrassing a witness.  See Motion at 6.

Concerning the theft-by-check charges, the United States maintains that the two convictions are more than ten years old.  See Motion at 6.  The United States argues that the danger of unfair prejudice and confusion outweighs "any marginal probative value" that the convictions may have.  Motion at 7.  To the theft allegations, the United States argues that if the Court allows questions on these thefts, it would have to allow "all conduct, not just prior conduct, that reflects adversely on a witness's general character."  Motion at 7 (emphasis in original).  The United States contends that this evidence would result in mini-trials in which the parties will go back-and-forth over the allegations, because, the United States argues, this evidence would require rebuttal witnesses.  See Motion at 7 (citing United States v. Bautista, 145 F.3d 1140 (10th Cir. 1998)).  The United States argues that the evidence can be introduced only if the evidence's probative value substantially outweighs its prejudicial effect.  See Motion at 8 (citing Fed. R. Evid. 609(b)).

The United States argues that, because rules 608 and 609 do not apply, L. Chapman can introduce this evidence only under rules 406 and 701 of the Federal Rules of Evidence.  See Motion at 8.  The United States contends that rule 406 concerns habit evidence and that the Tenth Circuit has found that forging a check, bouncing a check, or lying to obtain financial gain do not constitute habit.  See Motion at 8 (citing United States v. Troutman, 814 F.2d 1428

(10th Cir. 1987); <u>United States v. Fairchild</u>, 46 F.3d 11522, No. 93-3090, 1995 WL 21608 (10th Cir. Jan. 12, 1995)(unpublished); <u>United States v. Morris</u>, 41 F. App'x 160 (10th Cir. 2002)(unpublished)).   The United States also argues that rule 701, which concerns expert testimony, requires opinion testimony to be helpful to the determination of a pertinent fact, but that dishonesty or untruthfulness is not a charge or defense in this case.  <u>See</u> Motion at 8.

L. Chapman responds by arguing that D. Chapman writing the checks is "direct evidence of her less than truthful character."  Mr. Chapman's Sealed Response to the Prosecution's Motion <i>In Limine</i> ¶ 5, at 3, filed October 26, 2014 (Doc. 65)("Response")(citing <u>United States v. Manske</u>, 186 F.3d at 775-76; <u>United States v. Smith</u>, 80 F.3d 1188 (7th Cir. 1996)).  L. Chapman contends that D. Chapman's credibility is relevant to cross-examination, because the jury must decide whether to believe her testimony.  <u>See</u> Response ¶ 5, at 3.  L. Chapman argues that the jury should hear about the misconduct, so that it can appraise D. Chapman's credibility and bias. <u>See</u> Response ¶ 5, at 3.  L. Chapman also argues that not allowing him to engage in appropriate cross-examination would violate his Sixth Amendment rights.  <u>See</u> Response ¶ 6, at 3-4 (citing <u>United States v. Motelongo</u>, 420 F.3d 1169 (10th Cir. 2005)).   L. Chapman contends that limiting cross-examination would violate his constitutional right to have "'a meaningful opportunity to present a complete defense.'"   Response ¶ 7, at 4 (quoting <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984))(citing <u>Crane v. Kentucky</u>, 475 U.S. 683 (1986)). L. Chapman contends that an important part of his defense will be to cross examine D. Chapman to demonstrate her mendacity.  <u>See</u> Response ¶ 8, at 5.  L. Chapman argues that asking D. Chapman about her misconduct will allow the jury to more fully decide whether it should believer her.  <u>See</u> Response ¶ 8, at 5 (citing <u>United States v. Manske</u>, 186 F.3d at 775-78).

L. Chapman also argues that, if D. Chapman had "no qualms about deceiving" L. Chapman, D. Chapman may also not have trouble giving false testimony at trial.  Response ¶ 8, at 5.

L. Chapman contends that the checks that D. Chapman cashed on January 31, 2014, were payable to Ridgewood Transport, a business that L. Chapman solely owns.  See Response ¶ 4, at 2.  L. Chapman attached to the Response the signature card from his business account, which lists him as the only signatory.  See Business Signature Card, filed October 26, 2014 (Doc. 65-1). L. Chapman argues that cashing the check was an example of dishonest conduct, because D. Chapman stole the checks and cashed them without authority.  See Response ¶ 4, at 2-3. L. Chapman argues that under rule 609(b) evidence of a more-than ten year-old conviction can be introduced if the probative value substantially outweighs its prejudicial effect.  See Response ¶ 9, at 5.  L. Chapman contends that, because of the importance of D. Chapman's credibility, the convictions are "significantly probative" and, because the trial will take place in Albuquerque, New Mexico, and because D. Chapman lives in Dallas, Texas, the danger of unfair prejudice is minimal.  Response ¶ 9, at 5-6.  L. Chapman argues that rule 404(a)(2)(B) of the Federal Rules of Evidence allows evidence of an alleged relevant character trait, and that, if the Court does not permit the evidence to be admitted under rule 609, it should allow the evidence under rule 404(a)(2)(B).  See Response ¶ 10, at 6.

L. Chapman contends that rule 608(b) allows a cross-examination of a witness' specific instances of conduct that are probative to the witness' character for untruthfulness.  See Response ¶ 11, at 6.  L. Chapman argues that rule 608(b) does not contain an age limitation and that, if he cannot introduce evidence of the prior convictions, he intends to cross examine D. Chapman about the instances.  See Response ¶ 11, at 6.  L. Chapman argues that these events are directly relevant to D. Chapman's character for truthfulness and honesty, which are central to

the determinative issue in the case, because D. Chapman is the only percipient witness to the events giving rise to the charges.  See Response ¶ 11, at 6-7.  L. Chapman also argues that introduction of this evidence does not create a risk of mini-trials.  See Response ¶ 13, at 8.

L. Chapman distinguishes United States v. Beltran-Garcia by arguing that, there, the Tenth Circuit noted that some of the questions, which the district court precluded, were permissible, but that the district court had discretion to preclude the questions.  See Response ¶ 12, at 7.  L. Chapman maintains that United States v. Beltran-Garcia concerned a drug case in which the defendant sought to cross examine a police officer about an incident in which the officer was reprimanded for, among other things, failing to include important information in a police report.  See Response ¶ 12, at 7.  L. Chapman argues that the Tenth Circuit's decision in United States v. Beltran-Garcia was "based in part on the fact that the district court was anticipating some pretrial address of the issues by the defendants, which did not happen." Response ¶ 12, at 7.  L. Chapman contends that United States v. Beltran-Garcia was decided on an abuse of discretion standard and that the district court could have allowed the questions without abusing its discretion.  See Response ¶ 13, at 7.  L. Chapman argues that merely because the district court did not abuse its discretion by not allowing the questions does not mean that it was prohibited from permitting the questions.  See Response ¶ 13, at 7-8.

L. Chapman contends that rules 405(b) and 608 permit cross-examination on specific instances of conduct, and that evidence of a witness' other wrongs, acts, or crimes is admissible because it tends to negate a defendant's guilt.  See Response ¶ 14, at 8 (quoting United States v. Montelongo, 420 F.3d 1169, 1174 (10th Cir. 2005)).  L. Chapman argues that evidence that D. Chapman "embezzled and stole" from L. Chapman affects her believability, and calls into question L. Chapman's guilt.   Response ¶ 14, at 8-9.   L. Chapman contends that he and

D. Chapman were the only percipient witnesses to the events, and that D. Chapman's credibility is central to the United States' case and to his defense.  <u>See</u> Response ¶ 15, at 9.  L. Chapman argues that rule 403's balancing test does not require preclusion because there is minimal unfair prejudice while the evidence's probative value is great.  <u>See</u> Response ¶ 16, at 9.  In addressing an argument that the United States could raise, L. Chapman contends that, if D. Chapman is concerned that she may incriminate herself by admitting to a crime or by falsely denying that she committed a crime, the Court should inform her of her right to remain silent and give her an opportunity to consult with an attorney.  <u>See</u> Response ¶ 17, at 9-10.  L. Chapman argues that it is irrelevant that some of the incidents occurred after the alleged assault, because the conduct is essentially res gestae with the event and because incidents of fraudulent and dishonest behavior, which occurs before a witness testifies, are relevant to the witness' credibility, even if they occurred after the incident underlying the charged offense.  <u>See</u> Response ¶ 18, at 10.

L. Chapman clarified that of the articles, which D. Chapman took from the house -- specifically the computer and the firearm -- were awarded to D. Chapman as separate property in the final divorce decree.  <u>See</u> Chapman Supp. ¶ 2, at 2.  L. Chapman contends, however, that, when the items were taken, they belonged to him and that he did not relinquish his ownership to those items until the divorce decree, which was finalized and filed on October 16, 2014.  <u>See</u> Chapman Supp. ¶ 2, at 2.  L. Chapman maintains that the checks which D. Chapman took resulted in proceeds totaling $1,167.25.  <u>See</u> Chapman Supp. ¶ 3, at 2.  L. Chapman maintains that D. Chapman cashed the checks on January 31, 2014, and that, at 9:00 a.m. that morning, he removed D. Chapman as a signatory on the checking account from which the checks were drawn.  <u>See</u> Chapman Supp. ¶ 3, at 2.

3.      **The October 28, 2014, Hearing**.

The Court held a hearing on October 28. 2014.  At the hearing, the Court provided the parties with a preliminary ruling on the Motion.  See Transcript of Hearing at 12:12-15:21 (taken October 28, 2014)(Robert, Court)("Tr.").[2]  The Court noted that it was inclined to allow evidence of the prior convictions,[3] preclude evidence of the alleged theft of items from L. Chapman's house, and permit L. Chapman to ask D. Chapman about the cashed checks.  See Tr. at 12:12-15:21 (Robert, Court).

The United States argued that evidence of the prior convictions are more prejudicial than probative, because the time frame of the convictions makes their probative value minimal while the opportunity for the jury to "hold some prejudice against" D. Chapman is greater.  Tr. at 16:7-13 (Mott).  The United States contended that the jury may wonder if D. Chapman is still writing bad checks and that evidence of the convictions may be used to show that she acted in conformity with her prior convictions.  See Tr. at 16:12-15 (Mott).

Concerning the alleged theft of the items and cashing of the check, the United States argued that the items belonged to D. Chapman and that she had signatory power on the account at the time that she wrote the checks.  See Tr. at 16:16-23 (Mott).  The United States contended that D. Chapman has not been untruthful about the checks because she admitted that she wrote them.  See Tr. at 16:23-17:1 (Mott).  The United States argued that D. Chapman worked at Ridgewood Transport, that she had no other outside income, and that she had legal authority to

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may have slightly different page and/or line numbers.

[3]The Court referred to the two prior convictions as three prior convictions.  See Tr. at 12:16-21 (Court); id. at 14:2-9 (Court).  The United States clarified that there were only two prior convictions and that, although D. Chapman was charged with three theft misdemeanors, one was dismissed.  See Tr. 15:24-16:6 (Mott).

cash the checks.  See Tr. at 17:2-5 (Mott).  The United States argued that because D. Chapman had signatory power on the account, until the day she cashed the checks, and because D. Chapman cashed the checks after the alleged assault, the checks do not provide any probative value showing her reputation or propensity for untruthfulness.  See Tr. at 17:17:7-13 (Mott).  The United States contended that L. Chapman has a bias against D. Chapman and that he is attempting to make D. Chapman look like a bad person to fight the charges against him.  See Tr. at 17:13-19 (Mott).  The United States also argued that, because L. Chapman has agreed that the items that D. Chapman took were hers, the allegations of the theft have no probative value of truthfulness.  See Tr. at 17:21-18:1 (Mott).

L. Chapman responded by providing more information about the alleged theft and check cashing incidents.  See Tr. at 18:4-6 (Robert).  L. Chapman argued that, after he was arrested on January 25, 2014, or January 26, 2014, D. Chapman went back to their home in Abilene, and took items from the house, including items that belonged to L. Chapman.  See Tr. at 18:9-17 (Robert).  L. Chapman contended that, while the divorce decree awarded the firearm and computer to D. Chapman, the divorce decree was just recently entered.  See Tr. at 18:22-19:5 (Robert).  L. Chapman argued that the items belonged to him before the divorce decree.  See Tr. at 19:7-8 (Robert); id. at 22:19-23 (Robert).  He maintained that his divorce lawyer told him that nine-tenths of the law in Texas is possession and that, in the divorce decree, he did not admit that the items belonged to D. Chapman, but instead, to end the marriage cleanly, he agreed to include the items in D. Chapman's personal property.  See Tr. at 19:17-19 (Robert).

Concerning the checks, L. Chapman argued that, when D. Chapman went back to the house in Abilene, she took two or three checks from the house.  See Tr. at 20:2-9 (Robert).  L. Chapman contended that the check was made out to Ridgewood Transport, and that in

managing the business, he would deposit the checks into an operating account, and then pay himself and D. Chapman from the operating account, rather than cashing the checks.  See Tr. at 20:12-21 (Robert).  L. Chapman contended that he did not return to Abilene until January 31, 2014, and that, on the morning of January 31, he changed the signatories on the account.  See Tr. at 20:23-21:7 (Robert).  L. Chapman argued that the checks were not negotiated before January 31, 2014, that he is not sure whether D. Chapman knew that the signatories on the account had been changed when she cashed the check.  See Tr. at 21:15-22 (Robert).  L. Chapman contended that the bank did eventually accept the checks, but that D. Chapman did not cash the checks at the bank were the account was kept.  See Tr. at 22:8-10 (Robert).  L. Chapman asserted that D. Chapman did not write the checks, but that they were written by two other companies to Ridgewood Transport and were for already completed work.  See Tr. at 23:4-9 (Robert). L. Chapman argued that D. Chapman signed her name on the back of the check and cashed them. See Tr. at 23:4-14 (Robert).

L. Chapman argued that D. Chapman did not come into the marriage with a lot of resources and leave penniless, but instead that, when they married, she was eight- to ten-thousand dollars in debt, which L. Chapman paid off.  See Tr. 31:13-20 (Robert).  L. Chapman also argued that after the marriage, D. Chapman had access to twenty-thousand dollars in a 401k. See Tr. at 31:20-21 (Robert).

The Court asked L. Chapman what dishonesty was involved in endorsing the checks if D. Chapman has been open about endorsing the checks and has not tried to hide it.  See Tr. at 24:14-20 (Court).  L. Chapman argued that cashing the checks was more similar to embezzlement than theft and that it involved an element of dishonesty.  See Tr. at 24:21-25 (Robert).  L. Chapman argued that D. Chapman had served in a secretarial role with Ridgewood

Transport, and that taking and cashing the checks were not done in Ridgewood Transport's ordinary course of business.  See Tr. at 25:1-9 (Robert).  L. Chapman contended that D. Chapman did not cash the checks at a bank, but that she cashed them at a business which charges a substantial check-cashing fee and that she gave a false phone number in cashing the checks, which both have elements of dishonesty.  See Tr. at 25:9-15 (Robert); id. at 32:1-6 (Robert).  L. Chapman argued that, when D. Chapman took and cashed the checks, it was clear that the marriage was finished, that she was not going to be working at Ridgewood Transport anymore, and that, because she was not going to be married, D. Chapman decided to take the checks to get money while she still could.  See Tr. at 25:17-26:9 (Robert).

The United States replied by arguing that L. Chapman and D. Chapman met online and that D. Chapman left her home, job, and kids in Dallas to move to Abilene to marry L. Chapman, and that she had no means of support outside L. Chapman and Ridgewood Transport.  See Tr. at 27:6-15 (Mott).  The United States argued that D. Chapman had no resources to feed or support herself, or to move back to Dallas, so she took the checks, because they were her only available monetary resource and because it was for work that had already completed.  See Tr. at 28:2-16 (Mott).  The United States again argued that D. Chapman had signatory power on the account and that she had a legal right to cash the checks.  See Tr. at 28:16-19 (Mott).  The United States noted that it did not know what telephone number D. Chapman gave when she cashed the check, because L. Chapman had cancelled her telephone number, but argued that D. Chapman provided her driver's license, a Bank of America card, which contained her name, and connected to her and L. Chapman's account at the Bank of America,[4] and two other forms of identification.  See Tr. at 28:20-29:12 (Mott, Court).  The United States argued that D. Chapman was "up front" in

---

[4]It is unclear whether the Bank of America account that is connected to D. Chapman's card is the same account that the checks were meant to be deposited into.

presenting identification in cashing the check and was no dishonest at all.  Tr. at 29:13-23 (Mott).  Concerning the business practices of Ridgewood Transport, the United States contended that a large amount of extrinsic information, without any probative value, would need to come into evidence to show Ridgewood Transport's business practices.  See Tr. at 29:24-30:7 (Mott).

The United States contended that D. Chapman chose to not cash the check at the bank, which held the account, because L. Chapman had been banking there for some time, because he has friends at the bank, and because she is afraid of L. Chapman.  See Tr. at 33:12-16 (Mott). The United States argued that the Abilene police were contacted about the checks, but that police did not believe that the check cashing is a criminal matter.  See Tr. at 33:24-34:3 (Mott).  The United States responded to L. Chapman's contention that he paid off D. Chapman's debt by arguing that D. Chapman had paid her debt down to $3,500 and was continuing to pay it.  See Tr. at 34:6-10 (Mott).  The United States argued that L. Chapman may consider the check cashing to be theft but that it is not a dishonest act.  See Tr. at 24:18-20 (Mott).

The Court informed the parties that it was included to permit evidence of the prior convictions, preclude evidence of the taking of items from the home, and permit evidence of the checks.  See Tr. 34:21-35:1 (Court).  The Court noted that the check casing presented a new issue and that it wanted to think about the issue.  See Tr. 35:4-10 (Court).  The United States requested leave to determine what phone number that D. Chapman gave to the check cashing business, and the Court granted permission to do so.  See Tr. 35:11-15 (Mott, Court).

5.      **The United States' Supplement to the Motion.**

After the hearing, on the same day, the United States filed a supplement to the Motion. See United States' Sealed Supplement to Motion In Limine, filed October 28, 2014 (Doc. 78)("U.S. Supp.").   The United States attached to the U.S. Supp. the forms of

identification that D. Chapman used to cash the checks, which included her driver's license, her social security card, and three credit cards that belong to Ridgewood Transport and that have her name printed on them.  See U.S. Supp. ¶ 1 at 1-2.  The United States notes that D. Chapman does not recall what telephone number she provided the check-cashing company, but that it may have been the number that her sister gave her.  See U.S. Supp. ¶ 1, at 2.  The United States argue that based on the information which D. Chapman provided, the telephone number was not fraudulent and there was no dishonest act, because D. Chapman was upfront with her information -- she provided multiple forms of identification, she provided the phone number that she was using at that time, and she had signatory power on the account.  See U.S. Supp. ¶ 1, at 2.

The United States also renews its motion to exclude the prior convictions by arguing that they are over ten years old and that, while there were two cases, there was only one conviction.  See U.S. Supp. ¶ 2, at 2.  The United States contends that there were two charges, but that they were rolled into a single final disposition.  See U.S. Supp. ¶ 2, at 2.  The United States argues that the probative value of the conviction greatly outweighs its risk of unfair prejudice and that it will confuse the jury as to its relevance.  See U.S. Supp. ¶ 2, at 2.  The United States contends that evidence of this conviction will cause the jury to wonder why it is important, considering it is more than ten years old and is only a misdemeanor.  See U.S. Supp. ¶ 2, at 2.  The United States contends that the jury would wonder how the conviction could relate to this case and how it could relate to any dishonesty after so much time had passed.  See U.S. Supp. ¶ 2, at 2.

L. Chapman responds by arguing that D. Chapman did not provide her own telephone number when she cashed the checks.  See Supp. Response ¶ 1, at 1.  L. Chapman argues that, for the check "from Prime Transportation or City of Industry, California," D. Chapman gave Ace Check Cashing, as her work number, the number for Prime Transportation, which was printed on

the front of the check that L. Chapman cashed.  Supp. Response ¶ 2, at 2.  L. Chapman argues that this fact is further evidence of D. Chapman's dishonest intent in cashing the checks, rather than depositing them into Ridgewood Transport's business account.  See Supp. Response ¶ 2, at 2.

## LAW REGARDING RULE 609

"At common law a person who had been convicted of a felony was not competent to testify as a witness."  Green v. Bock Laundry Mach. Chaco., 490 U.S. 504, 511 (1989).  "[T]he disqualification arose as part of the punishment for the crime, only later being rationalized on the basis that such a person was unworthy of belief."  3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 609[02], at 609–58 (1988)(citing 2 J. Wigmore, Evidence § 519 (3d ed. 1940)).  "As the law evolved, this absolute bar gradually was replaced by a rule that allowed such witnesses to testify in both civil and criminal cases, but also to be impeached by evidence of a prior felony conviction or a crimen falsi misdemeanor conviction."  Green v. Bock Laundry Mach. Chaco., 490 U.S. at 511 (footnotes omitted).  However, "[i]n the face of scholarly criticism of automatic admission of such impeaching evidence, some courts moved toward a more flexible approach." Green v. Bock Laundry Mach. Chaco., 490 U.S. at 511 (footnotes omitted).

> As a means of impeachment, evidence of conviction of crime is significant only because it stands as proof of the commission of the underlying criminal act. There is little dissent from the general proposition that at least some crimes are relevant to credibility but much disagreement among the cases and commentators about which crimes are usable for this purpose.  The weight of traditional authority has been to allow use of felonies generally, without regard to the nature of the particular offense, and of crimen falsi without regard to the grade of the offense.

Fed. R. Evid. 609 advisory committee notes to the 1972 proposed rules (citations omitted).

1.      **Rule 609(a)(1).**

Rule 609(a)(1) of the Federal Rules of Evidence provides:

> **(a)**     **In General.** The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> > **(1)**     for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> >
> > > **(A)**     must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
> > >
> > > **(B)**     must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and

Fed. R. Evid. 609(a)(1). On whether to admit the nature of the underlying offense, the Tenth Circuit has held that, "[o]rdinarily, evidence of a witness's felony conviction shall include information about the nature of that conviction unless, after Rule 403 balancing, the probative value of such evidence is outweighed by its prejudicial effect." United States v. Lopez-Medina, 596 F.3d 716, 737 (10th Cir. 2010)(quoting United States v. Howell, 285 F.3d 1263, 1267-68 (10th Cir. 2002)). The Tenth Circuit discussed the different standards which apply to prior convictions offered against an accused as opposed to against a "simple witness":

> The Rule provides that evidence of a prior conviction of a witness shall be admitted unless, pursuant to Rule 403, its probative value is substantially outweighed by its prejudicial effect. In contrast, evidence of a prior conviction of the accused shall be admitted unless its probative value is merely outweighed by its prejudicial effect. See 28 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure § 6134, at 230 (1993) ("Rule 609(a)(1) is intended to make it harder to admit conviction evidence when offered against an accused than it is when offered against another witness.").

United States v. Howell, 285 F.3d at 1267 n.1. "Rule 609(a)(1) requires a district court to admit evidence of the nature and number of a non-defendant witness' prior felony convictions." United States v. Howell, 285 F.3d at 1268 (quoting United States v. Burston, 159 F.3d 1328, 1336 (11th Cir. 1998)). The Tenth Circuit adopted the reasoning of a United States Court of

Appeals for the Eleventh Circuit decision, which explained that "information about the nature of a witness's felony conviction is relevant [because] [t]he implicit assumption of Rule 609 is that prior felony convictions have probative value.  Their probative value, however, necessarily varies with their nature and number." United States v. Howell, 285 F.3d at 1268 (quoting United States v. Burston, 159 F.3d at 1335).  The Tenth Circuit also noted, however, that "the impeaching party is generally limited to establishing the bare facts of the conviction: usually the name of the offense, the date of the conviction, and the sentence." United States v. Howell, 285 F.3d at 1268 (quoting 4 J.B. Weinstein & M.A. Berger, Weinstein's Federal Evidence § 609.20[2] at 609-57 to 60).  A "defendant [i]s entitled to the protection of the rule that only the prior conviction, its general nature, and punishment of felony range [a]re fair game for testing the defendant's credibility . . . . [F]urther damaging details . . . [a]re not." United States v. Commanche, 577 F.3d 1261, 1270-71 (10th Cir. 2009)(quoting United States v. Wolf, 561 F.2d 1376, 1381 (10th Cir. 1977))("That Commanche was twice convicted of aggravated battery was properly admissible.  That the crimes involved cutting instruments consistent with the box cutter used in the present case was not.").  "A district court must conduct 'a Rule 403 balancing before determining to exclude all evidence of [a witness's] prior convictions other than the fact and date of such convictions.'" United States v. Lopez-Medina, 596 F.3d at 737 (quoting United States v. Howell, 285 F.3d at 1269).  "Care should be taken to protect the accused as far as possible from being convicted because of past conduct and not the crime for which he is being tried." United States v. Commanche, 577 F.3d at 1270-71 (quoting United States v. Wolf, 561 F.2d at 1381).

The Tenth Circuit emphasized the "mandatory nature of Rule 403 balancing," and held that "the court must conduct a Rule 403 balancing before determining what information about a witness's prior felony conviction, including its nature, should be admitted or excluded." United

States v. Howell, 285 F.3d at 1269-70.  In its original proposed form, rule 609(a) did not include

a provision for balancing prejudicial effect against probative value.  See Fed. R. Evid. 609

advisory committee notes to the 1972 proposed rules (stating that evidence that a witness "has

been convicted of a crime is admissible" to attack a witness' credibility if "he has been convicted

of a crime but only if the crime (1) was punishable by death or imprisonment in excess of one

year under the law under which he was convicted or (2) involved dishonesty or false statement

regardless of the punishment.").  Before enactment in 1974, the House of Representatives and

the Senate disagreed whether to allow only convictions involving dishonesty or false statement

to be used to impeach defendants or whether to allow all felonies.  See Fed. R. Evid. 609

advisory committee notes to the 1974 enactment.  The drafting committee adopted the Senate's

version, adding a balancing provision if the criminal did not involve dishonesty or false

statement:

> The House bill provides that the credibility of a witness can be attacked by proof of prior conviction of a crime only if the crime involves dishonesty or false statement.  The Senate amendment provides that a witness' credibility may be attacked if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involves dishonesty or false statement, regardless of the punishment.

> The Conference adopts the Senate amendment with an amendment.  The Conference amendment provides that the credibility of a witness, whether a defendant or someone else, may be attacked by proof of a prior conviction but only if the crime: (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted and the court determines that the probative value of the conviction outweighs its prejudicial effect to the defendant; or (2) involved dishonesty or false statement regardless of the punishment.

> . . . .

> With regard to the discretionary standard established by paragraph (1) of Rule 609(a), the Conference determined that the prejudicial effect to be weighed against the probative value of the conviction is specifically the prejudicial effect to the defendant. The danger of prejudice to a witness other than the defendant

(such as injury to the witness' reputation in his community) was considered and rejected by the Conference as an element to be weighed in determining admissibility. It was the judgment of the Conference that the danger of prejudice to a nondefendant witness is outweighed by the need for the trier of fact to have as much relevant evidence on the issue of credibility as possible. Such evidence should only be excluded where it presents a danger of improperly influencing the outcome of the trial by persuading the trier of fact to convict the defendant on the basis of his prior criminal record.

Fed. R. Evid. 609 advisory committee notes to the 1974 enactment.

> **2.**     <u>**Rule 609(a)(2).**</u>

Rule 609(a)(2) states:

> **(a)**     **In General.** The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> > **(2)**     for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving -- or the witness's admitting -- a dishonest act or false statement.

Fed. R. Evid. 609(a)(2). "Crimes qualifying for admission under Rule 609(a)(2) are not subject to Rule 403 balancing and must be admitted." <u>United States v. Harper</u>, 527 F.3d 396, 408 (5th Cir. 2008). <u>See</u> <u>United States v. Guardia</u>, 135 F.3d 1326, 1330 (10th Cir. 1998)(stating that rule 609(a)(2) is a "rare instance" where rule 403 does not apply).

> The only difference between [rule 609(a)(1) and 609(a)(2)] is that evidence of convictions for crimes involving "dishonesty or false statement," whether felonies or misdemeanors, *must* be admitted under Rule 609(a)(2) as being *per se* probative of credibility, while district courts, under Rule 609(a)(1), may admit evidence of a witness's felony convictions that do not constitute *crimen falsi*, subject to balancing pursuant to Rule 403.

<u>United States v. Estrada</u>, 430 F.3d 606, 615-16 (2d Cir. 2005)(emphasis in original)(citation omitted). <u>See</u> Fed. R. Evid. 609 advisory committee notes ("The admission of prior convictions involving dishonesty and false statement is not within the discretion of the court. Such

convictions are peculiarly probative of credibility and, under this rule, are always to be admitted.").

**3.** **Rule 609(b).**

Rule 609(b) states:

> **(b)** **Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
>
> > **(1)** its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
> >
> > **(2)** the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Fed. R. Evid. 609(b).

"[C]onvictions over ten years old generally do not have much probative value," but "there may be exceptional circumstances under which the conviction substantially bears on the credibility of the witness." Fed. R. Evid. 609 advisory committee's notes to the 1974 amendment. Convictions over ten years old should "be admitted very rarely and in exceptional circumstances," and a district court must make "specific findings on the record as to particular specific facts and circumstances it has considered in determining that the probative value of the conviction substantially outweighs its prejudicial impact." Fed. R. Evid. 609 advisory committee's notes to the 1974 amendment.

"The Tenth Circuit has not expressly adopted the view that exceptional circumstances must be found . . . ." United States v. Logsdon, No. CR 12-298-D TD, 2013 WL 5963012, at *2 (W.D. Okla. Nov. 7, 2013)(DeGiusti, J.). Instead, the Tenth Circuit has given district courts discretion whether to admit convictions that are over ten years old as long as the court applies the

rule 609 balancing test.  See United States v. Begay, 144 F.3d 1336, 1338 (10th Cir. 1998)("We review decisions to admit or exclude evidence of prior convictions for abuse of discretion and afford substantial deference when the district court has engaged in the balancing required by Federal Rule of Evidence 609." (citation omitted)(citing United States v. Halbert, 668 F.2d 489, 495 (10th Cir. 1991)); United States v. Rodriguez-Garcia, 983 F.2d 1563, 1571 (10th Cir. 1993)("[T]he district court has discretion to permit the introduction of convictions which fall outside of the ten year period if 'the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.'" (quoting Fed. R. Evid. 609(b)).

A prior conviction's probative value is its relevance to the testifying witness' credibility. See United States v. Begay, 144 F.3d at 1338 (affirming district court's exclusion of prior drug possession conviction, because the conviction "did not relate to dishonesty" and was, thus, "not necessarily relevant to credibility" (citing Wilson v. Union Pac. R.R. Co., 56 F.3d 1226, 1231 (10th Cir. 1995)); United States v. Jefferson, 925 F.2d 1242, 1256 (10th Cir. 1991)(affirming district court's inclusion of prior conviction for aggravated robbery when the district court concluded that the conviction was a substantial crime and might affect the witness' credibility); United States v. Halbert, 668 F.2d at 492, 495 (affirming district court's inclusion of  prior convictions of false pretense, mail fraud, and aggravated robbery, because the "the convictions were not unrelated to truthfulness").  In the rule 609(b) context, the Tenth Circuit has indicated that the prejudicial effect with which it is concerned is that the conviction may arouse "sentiment against the witness."  United States v. Begay, 144 F.3d at 1338.  In the rule 403 context, the Tenth Circuit determines the prejudicial effect of evidence by examining whether it "'provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward

the defendant apart from its judgment as to his guilt or innocence of the crime charged.'" United States v. Smith, 534 F.3d 1211, 1219 (10th Cir. 2008)(quoting United States v. Portillo-Quezada, 469 F.3d 1345, 1354 (10th Cir. 2006)).  At least one district court within the Tenth Circuit has applied the definition of prejudicial effect from rule 403 to the rule 609(b) analysis.  See United States v. Logsdon, 2013 WL 5963012, at *4 n.3.   Compare Fed. R. Evid. 403 (permitting exclusion of evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice"), with Fed. R. Evid. 609(b) (permitting inclusion of conviction if "its probative value . . . substantially outweighs its prejudicial effect").

"The Tenth Circuit has not identified specific factors to be considered by the Court in performing the Rule 609(b)(1) balancing [test]."  United States v. Logsdon, 2013 WL 5963012, at *3.  The Honorable Timothy D. DeGiusti, United States District Judge for the Western District of Oklahoma, identified four factors that other Circuit Courts of Appeals use in assessing the probative value of prior convictions.  See United States v. Logsdon, 2013 WL 5963012, at *3. These factors include: (i) "whether the [witness'] credibility is a crucial issue"; (ii) "whether the impeachment value of the prior conviction is high"; (iii) "whether the prior crime of conviction and the charged crime are so similar as to invite improper inferences"; and (iv) "whether the age of the prior conviction and the [witness'] subsequent history suggest his rehabilitation."  United States v. Logsdon, 2013 WL 5963012, at *3 (citing United States v. Gilbert, 668 F.2d 94, 97 (2d Cir. 1981)).

## LAW REGARDING RULE 608 EVIDENCE

"Rule 608 of the Federal Rules of Evidence provides certain mechanisms for attacking witnesses' character for truthfulness or untruthfulness."  Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 5476882, at *7 (D.N.M. Oct. 31, 2012)(Browning, J.).  See United States v.

Huerta-Rodriguez, No. CR 09-3206 JB, 2010 WL 3834061, at *7 (D.N.M. 2010) (Browning, J.)(same). In the criminal context, the Tenth Circuit has stated that "'defense counsel should ordinarily be given wide latitude when cross examining a witness about credibility or bias.'" United States v. Rosario Fuentez, 231 F.3d 700, 704 (10th Cir. 2000)(alteration omitted)(quoting United States v. DeSoto, 950 F.2d 626, 629 (10th Cir. 1991)). Nevertheless, "[o]ne key aspect of this rule is that its application is explicitly within the discretion of the district court." Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1114 (10th Cir. 2001). See United States v. Rosario Fuentez, 231 F.3d at 704 (10th Cir. 2000)("The trial court . . . retains discretion to reasonably limit cross-examination.")(internal quotations omitted)(quoting United States v. DeSoto, 950 F.2d at 629).

Rule 608(a) states:

> **(a)** **Reputation or Opinion Evidence.** A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Fed. R. Evid. 608(a). A witness' truthfulness or untruthfulness may be attacked by opinion or reputation evidence without ever proffering evidence of a good character for truthfulness. See United States v. Holt, 486 F.3d 997, 1002 (7th Cir. 2007)(noting that, while it is within the trial court's discretion to prohibit cross-examination of a police officer whether he had been suspended to call into question his credibility, the plaintiff "could have used Rule 608(a) and called a member of the department to testify directly about his opinions or reputation of [the credibility of the officer].").  To establish a proper foundation for the opinion or reputation testimony, a witness must show: "such acquaintance with the person under attack, the community in which he has lived and the circles in which he has moved, as to speak with

authority of the terms in which generally he is regarded."  <u>United States v. Rios</u>, 92 F.3d 1519,

1529 (10th Cir. 1996)(quoting <u>United States v. Bedonie</u>, 913 F.2d 782, 802 (10th Cir. 1990)),

<u>overruled on other grounds by</u>, <u>United States v. Flowers</u>, 464 F.3d 1127 (10th Cir. 2006).

Rule 608(b) provides the rule for admission of specific instances of conduct:

> **(b)**  **Specific Instances of Conduct.** Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> > **(1)**  the witness; or
> >
> > **(2)**  another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b).  "Under Federal Rule of Evidence 608(b), specific unrelated instances of a

witness's prior misconduct may be used to impeach the witness at the discretion of the court,

however, only to the extent the misconduct reflects on the witness's character for truthfulness."

<u>United States v. Beltran-Garcia</u>, 338 F. App'x at 770.[5]   "Though Rule 608 does not explicitly

---

[5]<u>United States v. Beltran-Garcia</u> is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  <u>See</u> 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that <u>United States v. Beltran-Garcia</u>, <u>United States v. Embry</u>, 452 F. App'x 826 (10th Cir. 2011)(unpublished), <u>Dalton v. Dinwiddie</u>, 273 F. App'x 724 (10th Cir. 2008)(unpublished), and <u>United States v. Lamb</u>, 99 F. App'x 843 (10th Cir. 2004)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence." United States v. Beltran-Garcia, 338 F. App'x at 770. The United States Court of Appeals for the District of Columbia Circuit has noted:

> Although 608(b) of the Federal Rules of Evidence does state that specific instances of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.

United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993).

Rule 608 was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness," and not "to bar extrinsic evidence for bias, competency and contradiction impeachment." Fed. R. Evid. 608 advisory committee's note to 2003 amendment. The rule precluding the

> admission of extrinsic evidence of specific instances of conduct of the witness when offered for the purpose of attacking credibility . . . does not apply, however, when extrinsic evidence is used to show that a statement made by a defendant on direct examination is false, even if the statement is about a collateral issue.

United States v. Fleming, 19 F.3d 1325 (10th Cir. 1994)(citing 27 Charles A. Wright & Victor J. Gold, Fed. Practice and Procedure: Evidence § 5096, at 546-47 (1990)). This doctrine, "known as 'specific contradiction,'" allows such impeachment "even if the evidence elicited . . . ordinarily might be collateral or otherwise inadmissible." United States v. Crockett, 435 F.3d 1305, 1313 (10th Cir. 2006)(citing Mason v. Okla. Turnpike Auth., 115 F.3d 1442, 1456 (10th Cir. 1997), overruled on other grounds by, TW Telecom Holdings Inc. v. Carolina Internet Ltd., 661 F.3d 495 (10th Cir. 2011)). See United States v. Cerno, 529 F.3d 926, 944 (10th

Cir. 2008)("If there is evidence that specifically contradicts a witness's testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying.").[6]

It is generally true that "a party may inquire into specific instances of conduct by extrinsic evidence only on cross-examination of a witness in challenging the truthfulness of his testimony." See Bennet v. Longacre, 774 F.2d 1024, 1027 (10th Cir. 1985). Where a party has already attacked a witness' credibility by cross-examination on specific instances of conduct and the witness made a false statement on the stand, however, the party may provide extrinsic evidence to impeach that witness on re-direct or during a later direct examination. See United States v. Embry, 452 F. App'x at 835 (noting that "Rule 608(b)(1) . . . allows impeachment testimony . . . on direct or redirect examination . . . where a party already has attacked the credibility of a witness by referring to specific instances of conduct."). When a witness makes a false statement while providing testimony, the opposing party is allowed to prove that lie by presenting rebuttal witnesses. See United States v. Crockett, 435 F.3d at 1313 ("[W]hen a defendant makes a false statement during direct testimony, the prosecution is allowed to prove, either through cross-examination or by rebuttal witnesses, that the defendant lied as to that fact.").

It is "permissible impeachment to expose a witness's bias." United States v. Baldridge, 559 F.3d 1126, 1135 (10th Cir. 2009)(citing United States v. Abel, 469 U.S. 45, 51 (1984)).

---

[6]Professors Charles Alan Wright and Victor James Gold recognize that, before the 2003 amendment, the "greater weight of authority" held that "Rule 608 regulates only the admissibility of character evidence and that subdivision (b) should not be read literally." 28 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure § 6117, at 86 (1993 & Supp. 2011). Professors Wright and Gold confirm that, as a result of the 2003 amendment, rule 608(b) "has been amended to make clear that it applies only to extrinsic evidence of conduct offered for the purpose of proving character for truthfulness or untruthfulness." 28 Wright & Gold, supra § 6117, at 14 (Supp. 2011).

"Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." United States v. Abel, 469 U.S. at 52.  Thus, because bias is never collateral, "it is permissible to [prove bias] by extrinsic evidence." Montoya v. City of Albuquerque, No. CIV 03-0261 JB/RHS, 2004 WL 3426435, at *4 (D.N.M. May 18, 2004)(Browning, J.).  The Tenth Circuit describes bias, based on its definition at common law, as "the relationship between a witness and a party which might cause the witness to slant his testimony for or against the party." United States v. Baldridge, 559 F.3d at 1135 (citing United States v. Abel, 469 U.S. at 52).[7]

## LAW REGARDING THE RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence." Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403). "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL

---

[7]Prejudice is defined as "[a] preconceived judgment formed with little or no factual basis; a strong bias." Black's Law Dictionary 1229 (9th ed. 2009). See New Oxford American Dictionary 1378 (3d ed. 2010)("[P]reconceived opinion that is not based on reason or actual experiences . . . dislike, hostility. . . ."). Bias is defined as: "Inclination; prejudice; predilection." Black's Law Dictionary, supra, at 183. Although bias and prejudice in contemporary discourse may be used interchangeably, with courts and lawyers both asserting that one has bias for something and bias against, they historically have been and are often distinguished by saying that there may be "bias or prejudice." E.g., Nev. Comm'n on Ethics v. Carrigan, 131 S. Ct. 2343, 2349 (2011)(quoting 28 U.S.C. § 144, which makes "any 'personal bias or prejudice' a basis for recusal"). Bias is associated more with an informed reason for favoring a person and prejudice with an uninformed hostility toward a class of persons. Bias now appears to be all inclusive, covering prejudice, too, and prejudice covers bias if the preposition "for" follows. The terms have thus apparently lost any distinction.

3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")).  "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'"  United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's notes).  Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."  United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)).  The Tenth Circuit has reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."  United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's

discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)).  See United States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter.  See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999).  Evidence is not unfairly prejudicial merely because it damages a party's case.  See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee notes).

## LAW REGARDING THE CONFRONTATION CLAUSE

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him." U.S. Const. amend. VI. In <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), the Supreme

Court held that, consistent with the Sixth Amendment, "[t]estimonial [hearsay] statements of

witnesses absent from trial [are admissible] only where the declarant is unavailable, and only

where the defendant has had a prior opportunity to cross-examine." 541 U.S. at 59. In <u>Davis v.</u>

<u>Washington</u>, 547 U.S. 813 (2006), the Supreme Court further elaborated on what a "testimonial"

statement is:

> Statements are nontestimonial when made in the course of police interrogation
> under circumstances objectively indicating that the primary purpose of the
> interrogation is to enable police assistance to meet an ongoing emergency. They
> are testimonial when the circumstances objectively indicate that there is no such
> ongoing emergency, and that the primary purpose of the interrogation is to
> establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822. The Tenth Circuit has restated this rule, defining a testimonial statement as "a

'formal declaration made by the declarant that, when objectively considered, indicates' that the

'primary purpose of the [statement is] to establish or prove past events potentially relevant to

later criminal prosecution.'" <u>United States v. Morgan</u>, 748 F.3d 1024, 1048 (10th

Cir. 2014)(alteration in original)(quoting <u>United States v. Smalls</u>, 605 F.3d 765, 777-78 (10th

Cir. 2010)). <u>Accord</u> <u>United States v. Chaco</u>, 801 F. Supp. 2d 1200, 1209-10 (D.N.M.

2011)(Browning, J.)(discussing developments in Tenth Circuit precedent on the test regarding

what qualifies as a testimonial statement).

In <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305 (2009), the Supreme Court addressed

whether the admission of a sworn affidavit by a forensic chemist, who testified in the affidavit

that the substance which police seized from the defendant was cocaine of a certain amount,

violated the Confrontation Clause. <u>See</u> 557 U.S. at 307. The Supreme Court first found that

such affidavits were testimonial, because they were "made under circumstances which would

lead an objective witness reasonably to believe that the statement would be available for use at a

later trial" and because, under Massachusetts law, the sole purpose of the affidavit was to provide prima facie evidence of the content of the substance seized.  557 U.S. at 310.  The Supreme Court then used the affidavit introduced by the prosecution to outline its concerns regarding the lack of cross-examination when such affidavits are introduced as evidence:

> The affidavits submitted by the analysts contained only the bare-bones statement that "[t]he substance was found to contain: Cocaine."  At the time of trial, petitioner did not know what tests the analysts performed, whether those tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed.  While we still do not know the precise tests used by the analysts, we are told that the laboratories use "methodology recommended by the Scientific Working Group for the Analysis of Seized Drugs[.]"  At least some of that methodology requires the exercise of judgment and presents a risk of error that might be explored on cross-examination.

557 U.S. at 320 (citation omitted).  Because there was no opportunity to cross-examine on these issues, the Supreme Court concluded that introduction of the affidavit violated the defendant's rights under the Confrontation Clause.  See 557 U.S. at 329 ("The Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits, and the admission of such evidence against Melendez-Diaz was error.").  The Supreme Court has since extended this holding to "forensic laboratory report[s] containing a testimonial certification -- made for the purpose of proving a particular fact -- through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification."  Bullcoming v. New Mexico, 131 S. Ct. 2705, 2710, 2715 (2011)("Accordingly, the analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess 'the scientific acumen of Mme. Curie and the veracity of Mother Teresa.'").

Except in rare cases, the prosecution's use of live or recorded video testimony without the defendant having the ability to confront the witness face-to-face violates a defendant's Confrontation Clause rights -- absent a showing of unavailability and prior opportunity to

confront the witness.  See United States v. Sandoval, No. 04-2362, 2006 WL 1228953, *7-9 (D.N.M. Mar. 7, 2006)(Browning, J.).  In Maryland v. Craig, 497 U.S. 836 (1990) -- which the Supreme Court decided before Crawford v. Washington -- the Supreme Court rejected a Confrontation Clause challenge to a Maryland statute that allowed a child witness in a child molestation case, under certain circumstances, to testify via a one-way closed circuit television, which did not allow the witness to view the defendant.  See 497 U.S. at 860.  While upholding the constitutionality of a child's testimony outside the defendant's presence, the Supreme Court in Maryland v. Craig recognized that the "central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  497 U.S. at 845.[8]

The Supreme Court in Maryland v. Craig recognized that the context of an adversary proceeding before the trier of fact involved "[t]he combined effect of these elements of confrontation -- physical presence, oath, cross-examination, and observation of demeanor by the trier of fact" that "is the norm of Anglo-American criminal proceedings."  497 U.S. at 846.  The Supreme Court in Maryland v. Craig also acknowledged the peculiar power of face-to-face confrontation in that "face-to-face confrontation enhances the accuracy of fact finding by reducing the risk that a witness will wrongfully implicate an innocent person," 497 U.S. at 846 (citing Coy v. Iowa, 487 U.S. 1012, 1019-20 (1988)), and that "face-to-face confrontation forms 'the core of the values furthered by the Confrontation Clause,'" Maryland v. Craig, 497 U.S. at 847 (quoting California v. Green, 399 U.S. 149, 157 (1970)).

---

[8]The Supreme Court has since distanced itself from this holding that the purpose of the Confrontation Clause is to ensure the reliability of evidence.  See Crawford v. Washington, 541 U.S. at 61.

The Supreme Court explained in <u>Maryland v. Craig</u> that the Confrontation Clause "reflects a preference for face-to-face confrontation at trial," but that the preference "must occasionally give way to considerations of public policy and the necessities of the case." 497 U.S. at 849 (internal quotation marks omitted). The Supreme Court emphasized that the preference for face-to-face confrontation is strong, and that a defendant's Sixth Amendment confrontation right "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." 497 U.S. at 850.

While the issue is decidedly less clear, it is unlikely that a violation of a defendant's Confrontation Clause rights occur when he calls one of his own witnesses who is aligned with him by videoconference or telephonically. <u>See</u> U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted <u>with the witnesses against him</u> . . . ." (emphasis added)). <u>Cf.</u> <u>United States v. Olguin</u>, 643 F.3d 384, 392 (5th Cir. 2011)("The Sixth Amendment guarantees the right to confrontation against a party testifying against him, not against others."). The need for "adversariness" is not present when the witness is aligned with the defendant. <u>Maryland v. Craig</u>, 497 U.S. at 845. The Supreme Court spoke in <u>Crawford v. Washington</u> about the need for the defendant to have "an adequate opportunity to cross-examine" a witness to satisfy the Confrontation Clause, a need which is not present when the witness is aligned with the defendant. <u>See</u> 541 U.S. at 58. The Federal Rules of Evidence, for example, generally do not permit a party to ask leading questions -- a key tool of cross examination -- of a witness aligned with the party calling the witness. <u>See</u> Fed. R. Evid. 611(c).[9]

---

[9]Rule 611(c) of the Federal Rules of Evidence provides: "(c) **Leading Questions.** Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions: (1) on

A defendant might also waive a Confrontation Clause challenge by calling his own witness by videoconference or telephonically.  See United States v. Lopez-Medina, 596 F.3d 716, 730-734 (10th Cir. 2010)("Prior to Crawford, we held there was 'no doubt' a defendant could waive his rights under the Confrontation Clause.  The parties do not argue Crawford changed this rule.").

Like many constitutional rights, a defendant may choose to waive his Confrontation Clause rights.  In 1969, the Supreme Court recognized that a defendant may waive his Confrontation Clause rights and that defendants commonly do so when pleading guilty.  See Boykin v. Alabama, 395 U.S. 238, 270 (1969)("Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. . . .  Third, is the right to confront one's accusers.").  The Tenth Circuit has recognized that, both before and after the Supreme Court's decision in Crawford v. Washington, a defendant may knowingly waive his Confrontation Clause rights at trial.  See United States v. Lopez-Medina, 596 F.3d at 730-734 (recognizing that Confrontation Clause rights may be waived at trial "at least where there is an explicit waiver").  Specifically, the Tenth Circuit stated: "Prior to Crawford, we held there was 'no doubt' a defendant could waive his rights under the Confrontation Clause.  The parties do not argue Crawford changed this rule."  United States v. Lopez-Medina, 596 F.3d at 731 (citations omitted).  The Tenth Circuit has held that a defendant's counsel can stipulate to the admissibility of evidence that would otherwise violate the Confrontation Clause if doing so "was a matter of prudent trial strategy."  Hawkins v. Hannigan, 185 F.3d 1146, 1155 (10th Cir. 1999).  The United States Court of Appeals for the Sixth Circuit has recognized that such a waiver can be permissible in the context of the prosecution admitting a videotaped deposition of

cross-examination; and (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."  Fed. R. Evid. 611(c) (bold in original).

one of its witnesses.   See Earhart v. Konteh, 589 F.3d 337, 344 (6th Cir. 2009).   The Sixth

Circuit in that case relied on one of its prior decisions where it had permitted such a waiver:

> The State relies upon our holding in Bailey v. Mitchell, 271 F.3d 652 (6th Cir. 2001), to argue that Earhart waived his right to contest the admission of the videotape deposition.   In Bailey, we held that a criminal defendant waived his right to confrontation by entering into a quid pro quo agreement with a state prosecutor.   Id. at 657.   The petitioner in Bailey had agreed to allow the State to admit the videotape deposition if the prosecutor would consent to the defendant's motion for a continuance.   Id.   Importantly, the Ohio state courts found as a factual matter that Bailey had made an explicit deal with the prosecutor for the admission of the videotape.   Id.

Earhart v. Konteh, 589 F.3d at 344.   Notably, the Tenth Circuit's case in United States v.

Lopez-Medina involved an oral waiver on the record in open court.   See 596 F.3d at 731 ("It is

clear from this statement [to the judge] that defense counsel intentionally relinquished his (or

rather, his client's) confrontation right through his questioning of Johnson.").

## ANALYSIS

The Court will grant the Motion in part and deny it in part.   The Court will permit

L. Chapman to introduce evidence of D. Chapman's prior convictions.   While these two

convictions are more than ten years old, the Court concludes that their probative value

substantially outweighs their prejudicial effect.   The Court will also allow L. Chapman to ask

D. Chapman on cross-examination about the check-cashing incident, because the incident may

be probative to D. Chapman's truthfulness.   The Court will not, however, allow L. Chapman to

ask D. Chapman on cross-examination about, or to introduce evidence of, the taking of items

from the Abilene house.   Even taking L. Chapman's representation of the taking as a theft, theft -

- without some aspect of dishonesty -- is not an act that is probative to truthfulness and is, thus,

not admissible under rule 608(b).   This limitation on L. Chapman's cross-examination does not

violate his Sixth Amendment rights, because it is not appropriate cross-examination, and because

L. Chapman has other avenues through which he can attack D. Chapman's credibility.

## I.    L. CHAPMAN MAY INTRODUCE EVIDENCE OF D. CHAPMAN'S PRIOR CONVICTIONS.

The Court will allow L. Chapman to introduce evidence of D. Chapman's two prior

convictions.  Both convictions are more than ten years old.  See Motion at 1-2.  Both convictions

were discharged on June 13, 2003.   See Motion at 1-2.   For the second conviction, the

disposition noted that D. Chapman received 180 days of probation.  See Motion at 2.  It is not

clear whether the 180 days of probation was imposed for both convictions or for only one, and it

is not clear whether the probation period started on June 13, 2003 or ended on that date.  See

Motion at 2.  Rule 609(b)'s ten-year time period begins to run on the date of conviction or

release from confinement, see Fed. R. Evid. 609(b), and not on the date of release from

probation, see United States v. Stoltz, 683 F.3d 934, 939 (8th Cir. 2012).  The ten-year time

period for rule 609(b), thus, began to run on June 12, 2003.  See Motion at 1-2.  Ten years have

passed since June 13, 2003, and the convictions are, accordingly, not admissible under rule

609(a).  The convictions may, however, be admissible under rule 609(b) if their probative value

substantially outweighs their prejudicial effect.  See Fed. R. Evid. 609(a).

If the probative value of the prior convictions -- the amount in which they affect

D. Chapman's credibility -- substantially outweighs their prejudicial effect -- the severity in

which they create a negative sentiment and provoke a negative responses against D. Chapman --

they are admissible under rule 609(b).  See Fed. R. Evid. 609(b).  Judge DeGiusti has identified

four factors that courts consider in conducting this balancing test.  See United States v. Logsdon,

2013 WL 5963012, at *3.  These factors include: (i) "whether the [witness'] credibility is a

crucial issue"; (ii) "whether the impeachment value of the prior conviction is high";

(iii) "whether the prior crime of conviction and the charged crime are so similar as to invite improper inferences"; and (iv) "whether the age of the prior conviction and the [witness'] subsequent history suggest his rehabilitation." United States v. Logsdon, 2013 WL 5963012, at *3. The Court believes that these factors are useful in conducting rule 609(b)'s balancing test.

First, D. Chapman's credibility is crucial in the case. See United States v. Logsdon, 2013 WL 5963012, at *3. D. Chapman and L. Chapman are the only two witnesses to the alleged assault. See Response ¶ 11, at 6-7. If L. Chapman choses to testify, the case may turn on whom the jury choses to believe: L. Chapman or D. Chapman. D. Chapman's credibility is, thus, important to the United States' case and to L. Chapman's defense. Without D. Chapman's testimony, the United States may not have a case to present to the jury.

Second, the impeachment value of the theft-by-check convictions is high. See United States v. Logsdon, 2013 WL 5963012, at *3. While these convictions may not be admitted under rule 609(a)(2), because the ten-year time period has run, a number of Courts of Appeals have held that theft by check is a crime that involves a dishonest act or false statement. See United States v. Harper, 527 F.3d at 408; United States v. Mucci, 630 F.2d 737, 743 (10th Cir. 1980)(holding that the prior formation of rule 609(a)(2) was "broad enough to cover conviction of a misdemeanor for issuing a bad check"); United States v. Dunson, 142 F.3d 1213, 1215 (10th Cir. 1998); United States v. Kane, 944 F.2d 1406, 1412 (7th Cir. 1991); Wagner v. Firestone Tire & Rubber Co., 890 F.2d 652, 655 n.3 (3d Cir. 1989). But see United States v. Barb, 20 F.3d 694, 698 (6th Cir. 1994)(holding that district court erred in admitting evidence of conviction for writing a worthless check, because the conviction did not involve dishonesty); United States v. Arhebamen, 197 F. App'x 461, 466-67 (6th Cir. 2006)(unpublished)(holding that prior

convictions for drawing insufficient funds and drawing a check without a bank account were

admissible under rule 609(a)(2)).[10]

---

[10]The majority of these cases involved the prior rendition of rule 609(a)(2), which stated:

**(a)**     **General Rule.**  For the purpose of attacking the credibility of a witness,

  . . .

  **(2)**     evidence that any witness has been convicted of a crime
shall be admitted if it involved dishonesty or false
statement.

Fed. R. Evid. 609(a)(2) 1990 Amendments.  In 2006, rule 609(a)(2) was amended to state:

**(a)**     **General rule**. -- For the purpose of attacking the character for truthfulness
of a witness,

  . . .

  **(2)**     evidence that any witness has been convicted of a crime
shall be admitted regardless of the punishment, if it readily
can be determined that establishing the elements of the
crime required proof or admission of an act of dishonesty
or false statement by the witness.

Fed. R. Evid. 609(a)(2) 2006 Amendments.  The Advisory Committee's Notes states that:

The amendment provides that Rule 609(a)(2) mandates the admission of evidence
of a conviction only when the conviction required the proof of (or in the case of a
guilty plea, the admission of) an act of dishonesty or false statement.  Evidence of
all other convictions is inadmissible under this subsection, irrespective of whether
the witness exhibited dishonesty or made a false statement in the process of the
commission of the crime of conviction.  Thus, evidence that a witness was
convicted for a crime of violence, such as murder, is not admissible under Rule
609(a)(2), even if the witness acted deceitfully in the course of committing the
crime.

  . . . .

The amendment requires that the proponent have ready proof that the conviction
required the factfinder to find, or the defendant to admit, an act of dishonesty or
false statement.  Ordinarily, the statutory elements of the crime will indicate
whether it is one of dishonesty or false statement.  Where the deceitful nature of
the crime is not apparent from the statute and the face of the judgment -- as, for

In United States v. Harper, the United States Court of Appeal for the Fifth Circuit held

that the district court abused its discretion by precluding evidence of a witness' prior convictions

_____

example, where the conviction simply records a finding of guilt for a statutory offense that does not reference deceit expressly -- a proponent may offer information such as an indictment, a statement of admitted facts, or jury instructions to show that the factfinder had to find, or the defendant had to admit, an act of dishonesty or false statement in order for the witness to have been convicted.

Fed. R. Evid. 609 advisory committee's notes to 2006 amendments.   After the 2006 Amendments, rule 609(a)(2), requires the proponent of the evidence to show that the conviction required proof of dishonesty or of a false statement.  See Fed. R. Evid. 609 advisory committee's notes to 2006 amendments.  Rule 609(a)(2) was again amended in 2011 to the current rendition of the rule, but these amendments were "intended to be stylistic only" with "no intent to change any result in any ruling on evidence admissibility."  Fed. R. Evid. 609 advisory committee's notes to 2011 amendments.

Most of the cases that permitted evidence of prior convictions for writing bad checks were decided before the 2006 amendments.  See United States v. Mucci, 630 F.2d at 743; United States v. Dunson, 142 F.3d at 1215; United States v. Kane, 944 F.2d at 1412; Wagner v. Firestone Tire & Rubber Co., 890 F.2d at 655 n.3.  It is not clear, whether these courts would have concluded that the bad check convictions required proof of dishonesty -- and thus admissible under the current rule 609(a)(2) -- or merely involved a dishonest act -- and thus admissible under the prior rule 609(a)(2) but not the current rule.  Several courts have found that a conviction for writing a bad check requires proof of a dishonest act and is admissible under the current rule 609(a).   See United States v. Harper, 527 F.3d at 408 (holding that district court erred for not admitting evidence of theft-by-check conviction); United States v. Arhebamen, 197 F. App'x at 466-67 (holding that prior convictions for drawing insufficient funds and drawing a check without a bank account were admissible under rule 609(a)(2)); United States v. Miller, No. CR 09-4014-MWB, 2009 WL 3676394, at *4 (N.D. Iowa Oct. 30, 2009) (Bennet, J.)(concluding that an Iowa "bad check" conviction required proof of a dishonest or false statement); Primrose v. Mellott, No. CV 1:11-00835, 2012 WL 3890135, at *2 (M.D. Pa. Sept. 7, 2012 (Kane, C.J.)(concluding that a conviction for writing a bad check requires "proof of dishonesty or false statement"); Foley v. Town of Lee, 863 F. Supp. 2d 130, 136 (D.N.H. 2012)(LaPlante, J.)(concluding that a conviction for issuing or passing a check while knowing or believing that the check would not be paid was admissible under rule 609(a)(2)); Brawner v. Allstate Indem. Co., No. CIV 07-00482, 2008 WL 126634, at *5 (E.D. Ark. Jan 10, 2008)(Eisele, J.)(noting that conviction for writing a "hot check" may be admissible under rule 609(a)(2)).  But see United States v. Kelly, 510 F.3d 433, 438 (4th Cir. 2007)(holding that district court did not err in refusing to admit a conviction for writing a worthless check under rule 609(a)(2) when the party proffering the conviction merely noted that it was for insufficient funds and cited to the statute without explaining how it involved a dishonest act).  The vast majority of cases indicate that writing a bad check constitutes a dishonest act and is admissible under rule 609(a)(2).

for theft by check.  See 527 F.3d at 407-08.  The Fifth Circuit held that a theft-by-check[11]

conviction has "as an element 'an act of dishonesty or false statement,'" and is admissible under

rule 609(a)(2).  United States v. Harper, 527 F.3d at 408 (quoting Fed. R. Evid. 609(a)(2)).  In

United States v. Dunson, the Tenth Circuit affirmed the district court's preclusion of a witness'

prior shoplifting conviction, because shoplifting does not involve a dishonest act or false

statement.  See 142 F.3d at 1215-16.  The district court reasoned that:

> A straight theft offense is not the type of offense involving Rule 609(a)(2),
> dishonesty or false statement contemplated by that rule.  You know, a bad check,
> fraud by check, perhaps use of a stolen credit card where one represents one's self
> dishonestly to be the lawful possessor of that credit card might be a type of theft
> that would fall under 609(a)(2) as would a bad check.  But straight shoplifting, I
> think you are right, falls outside the scope of 609(a)(2).

United States v. Dunson, 142 F.3d at 1215.  The Tenth Circuit noted that it did not perceive error

in this analysis.  See 142 F.3d at 1215 ("We perceive no error in the court's analysis.").

Numerous courts have held that convictions for writing bad checks or for theft by check

require proof of a dishonest act or false statement.  See, e.g., United States v. Harper, 527 F.3d

at 408.  Convictions which require proof of a dishonest act or statement are more probative to a

witness' credibility than other convictions.  See Fed. R. Evid. 906 advisory committee's notes

1974 enactment (noting that "crimes involving dishonesty or false statement" bears "directly on

credibility").  Rule 609(a) recognizes that convictions involving a dishonest act or false

statement bear more directly on a witness' credibility than other convictions by allowing

---

[11]It appears, but is not clear, that the theft-by-check statute the Fifth Circuit considered in
United States v. Harper is the same statute under which D. Chapman was convicted.  The United
States has not specified under what statute D. Chapman was convicted; however, D. Chapman is
from Texas, so the convictions were likely for violating the Texas theft-by-check statute.  See
Tex. Penal Code § 31.06(a) (West).  The Fifth Circuit in United States v. Harper also did not
specify which statute the witness' theft-by-check convictions arose under, but the trial, in which
the witness testified, took place in Texas.  See 527 F.3d at 396.  Consequently, it appears that
D. Chapman's convictions arose under the same Texas statute that the Fifth Circuit held involves
a dishonest act or false statement.  See United States v. Harper, 527 F.3d at 408.

evidence of convictions that require proof of a dishonest act or false statement under rule 609(a)(2), but allowing only the admission of other convictions if the convictions were for a felony and the probative value of the conviction outweighs its prejudicial effect.  See Fed. R. Evid. 609.   D. Chapman's theft-by-check convictions, thus, bear directly on her credibility because they involved a dishonest act or false statement.  See, e.g., United States v. Harper, 527 F.3d at 408.   Consequently, these convictions are probative of D. Chapman's credibility and, thus, have high impeachment value.  See United States v. Logsdon, 2013 WL 5963012, at *3.

To Judge DeGiusti's third factor -- "whether the prior crime of conviction and the charged crime are so similar as to invite improper inferences" -- this factor appears to be more relevant to cases in which the criminal defendant is testifying, which was the case in United States v Logsdon.  2013 WL 5963012, at *1, 3.  This factor, however, seems to address the prejudicial effect of the convictions, which the Tenth Circuit has characterized as a "sentiment against the witness," United States v. Begay, 144 F.3d at 1338, and which, in the rule 403 context, the Tenth Circuit has characterized as provoking "an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant apart from its judgment as to his guilt or innocence of the crime charged," United States v. Smith, 534 F.3d at 1219.  D. Chapman's prior convictions are two theft-by-check misdemeanors.  See Motion at 1-2.  The convictions are not for egregious or reprehensible felonies, but are mere misdemeanors for writing bad checks.  These convictions will not likely create any -- or at least any substantial -- negative sentiment towards D. Chapman or provoke an emotional response against her.  The third factor, thus, indicates that the convictions will have a small, if any, prejudicial effect against D. Chapman, who lives in Dallas, not Albuquerque.

Fourth, the age of the prior convictions and D. Chapman's subsequent history suggests a lack of rehabilitation.  See United States v. Logsdon, 2013 WL 5963012, at *3.  Rule 609(b)'s ten-year time period ran a year and four months before trial in this case.  Compare Motion at 1-2 (noting that convictions were disposed of on June 23, 2013), with Order to Continue at 2 (setting trial to start on October 29, 2014).  The age of the convictions weighs in favor of exclusion, but D. Chapman's subsequent conduct indicates otherwise.  L. Chapman alleges that D. Chapman stole checks from his house, that she cashed them at a check-cashing business that charges a substantial fee, that cashing the checks was not done in the ordinary course of Ridgewood Transport's business, and that she gave the check-cashing business a false telephone number.  See Response ¶ 4, at 2-3.  This check-cashing incident may not arise to the level of a criminal act, and, as the United States noted, the Abilene Police did not think the check-cashing incident rose to the level of criminality.  See Tr. at 33:24-34:3 (Mott).  This incident indicates, however, that D. Chapman engaged in a dishonest act that involved checks.  D. Chapman was not a signatory on the account, although it is unclear whether she was aware that she was no longer a signatory on the account.  See Chapman Supp. ¶ 3, at 2 (noting that D. Chapman was a signatory on the account up until the date that she cashed the checks).  Additionally, D. Chapman cashed the checks at a check-cashing business that charges a fee to cash the checks, rather than at a bank.  See Tr. at 25:9-15 (Robert); id. at 32:1-6 (Robert).  This factor can cut either way.  The age of the convictions calls for exclusion, while the subsequent check-cashing incident calls for inclusion.

Three of the factors call for admitting the prior convictions while the fourth factor can support either inclusion or exclusion.  The Court concludes that, because the prior convictions are substantially probative to D. Chapman's credibility -- as they required proof of a dishonest

act or false statement -- because D. Chapman's testimony is a crucial component of the United States' case, and because the prior convictions have a minimal prejudicial effect on D. Chapman, the probative value of the prior convictions substantially outweighs their prejudicial effect.  The prior convictions are, thus, admissible under rule 609(b), and the Court will permit L. Chapman to introduce evidence of the prior convictions.[12]

## II.   THE COURT WILL NOT PERMIT L. CHAPMAN TO ASK D. CHAPMAN ABOUT THE ALLEGED THEFT OF ITEMS FROM THEIR HOME NOR INTRODUCE EVIDENCE OF THE INCIDENT.

The Court will not allow L. Chapman to ask D. Chapman about the alleged theft of items from their Abilene home, nor will the Court allow L. Chapman to introduce evidence of the incident.  D. Chapman was not charged or convicted for the alleged theft, which means rule 608, and not rule 609, governs the admissibility of evidence concerning the incident.  D. Chapman has not argued that alleged theft is relevant to the events that occurred on or about January 26, 2014, at the VA hospital.   The alleged theft is, thus, not relevant to this case, unless it concerns D. Chapman's character for truthfulness under rule 608.

Rule 608(b) provides:

> **(b)     Specific Instances of Conduct.**  Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> **(1)**     the witness; . . .

---

[12]The United States also argues that the convictions are inadmissible under rule 403.  See Motion at 7.  Rule 609(b)'s balancing test -- which requires the probative value of the evidence to substantially outweigh the prejudicial effect -- is more stringent than rule 403's balancing test -- which requires the probative value of the evidence to not be substantially outweighed by the danger of unfair prejudice.  Compare Fed. R. Evid. 609(b), with Fed. R. Evid. 403.  Because the Court has concluded that evidence of the prior convictions satisfies rule 609(b)'s stringent balancing test, it also satisfies rule 403's more lenient balancing test.

Fed. R. Evid. 608(b).  Under rule 608(b), evidence of the alleged theft is admissible only if it is "probative of the character for truthfulness or untruthfulness."  Fed. R. Evid. 608(b).

Theft, in and of itself, is not probative of untruthfulness or dishonesty.  The Court has previously found that "straightforward theft devoid of any sort of indication of dishonest or false statements," such as burglarizing a car, "is not probative of untruthfulness" and is "not a proper subject for cross-examination under rule 608(b)."  Pedroza v. Lomas Auto Mall, Inc., No. CIV 07-0591 JH/RHS, 2009 WL 1325440, at *5 (D.N.M. Apr. 6, 2009)(Browning, J.).  The Tenth Circuit has similarly held that an "arrest for auto theft has no bearing on a witness's character for truthfulness."  United States v. Lamb, 99 F. App'x 843, 847 (10th Cir. 2004)(unpublished).  The Eleventh Circuit reached a similar conclusion, holding that evidence of a prior theft is not admissible under rule 608(b), because it is not "conduct bearing on truthfulness."  United States v. Sellers, 906 F.2d 597, 603 (11th Cir. 1990).  If a theft involved a dishonest act, such as fraud or deceit, then it may be admissible under rule 608(b).  As the Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit, has explained,

> Murillo's deferred adjudication for misdemeanor theft might conceivably satisfy Rule 608(b) as well.  It is unclear from the record whether his theft charge was a crime involving dishonesty, such as "theft by deception" or "theft forgery."  If so, then it would likely be admissible under Rule 608(b) as evidence of his truthfulness.  Compare, e.g., United States v. Newman, 849 F.2d 156, 163 (5th Cir. 1988)(holding prior convictions for "theft by deception" and "theft-forgery" were properly admitted under Rule 609(a)(2)) with Coursey v. Broadhurst, 888 F.2d 338, 341 (5th Cir. 1989)(holding that felony theft of cattle is not a crime involving dishonesty or false statements under Rule 609(a)(2)).

United States v. Sipe, 388 F.3d 471, 486 n.40 (5th Cir. 2004).

L. Chapman alleges that D. Chapman stole items from their residence in Abilene.  See Response at 2.  He does not allege, however, that D. Chapman used deceit or fraud to steal the items.  Rather, it appears that she just took them.  Such conduct may be probative of greed, but it

is not probative of untruthfulness.  Accordingly, because the alleged theft did not concern a dishonest act, and because it is not probative of untruthfulness, the Court will not permit L. Chapman to present evidence of the alleged theft.

### III.   THE COURT WILL PERMIT L. CHAPMAN TO ASK D. CHAPMAN ON CROSS-EXAMINATION ABOUT THE CHECK-CASHING INCIDENT.

The Court will permit L. Chapman to ask D. Chapman on cross-examination about the check-cashing incident.  Cashing a bad or stolen check is a crime that involves a dishonest act. See, e.g., United States v. Harper, 527 F.3d at 408; United States v. Mucci, 630 F.2d at 743.  The Court has previously concluded that a crime that is admissible under rule 609(a) also qualifies as conduct probative of truthfulness under rule 608(b).  See Pedroza v. Lomas Auto Mall, Inc., 2009 WL 13254400, at *5 ("With respect to whether theft is probative of dishonesty, the Court sees no difference between rule 609(a)(2) and rule 608(b).").  Similarly, the Tenth Circuit has relied on a case interpreting rule 609(a) to determine whether conduct is admissible under 608(b).  See United States v. Lamb, 99 F. App'x at 847 (citing United States v. Dunson -- which held that shoplifting is not a crime involving dishonesty or a false statement under prior version of rule 609(a)(2) -- to hold that auto theft is not conduct bearing on a person's character for truthfulness under rule 608(b)).  Because cashing a stolen check is a crime involving a dishonest act under rule 609(a)(2), the Court concludes that it is also a conduct that is probative to untruthfulness under rule 608(b).

Furthermore, even if all rule 609(a)(2) crimes did not constitute rule 608(b) conduct, the Court concludes that cashing a stolen check does.  By cashing the check, D. Chapman represented that she had the authority to cash the check.  If she stole the checks and did not have such authority, then her conduct in making that representation is probative of her character for untruthfulness.  It indicates that she is willing to make false representations when the

misrepresentations suit her purposes.  This willingness to make false representations bears on her honesty and truthfulness.  Evidence of D. Chapman cashing the stolen checks is thus conduct that is admissible under rule 608(b).[13]

While this evidence is admissible under rule 608(b), Chapman may only introduce the evidence through questions on cross examination.  Rule 608(b) states that "the court may, on cross-examination, allow [specific instances of a witness's conduct] to be inquired into if they are probative of character for truthfulness or untruthfulness if . . . the witness."  Fed. R. Evid. 608(b).  Extrinsic evidence of past crimes may be introduced outside of cross-examination under rule 609.  Rule 609, however, requires a conviction, see Fed. R. Evid. 609(a), and D. Chapman has not been convicted for the stolen check incident.  Consequently, rule 608(b) is the only avenue of admissibility.  L. Chapman may only ask D. Chapman about the alleged stolen check on cross-examination and may not introduce extrinsic evidence to show that L. Chapman stole the checks.

## IV.   LIMITING L. CHAPMAN'S CROSS-EXAMINATION OF D. CHAPMAN DOES NOT VIOLATE HIS SIXTH AMENDMENT RIGHTS.

Limiting L. Chapman's cross-examination of D. Chapman does not violate his Sixth Amendment Rights.  Confrontation Clause cases fall into two broad categories.

"The first category reflects the Supreme Court's longstanding recognition that the literal right to 'confront' the witness at the time of trial forms the core of the values furthered by the Confrontation Clause."  [Delaware v. Fensterer, 474 U.S. 15, 18 (1985)(per curiam)](quotations omitted). . . .

---

[13]The Court is not concluding that D. Chapman actually lacked authority to cash the check or that she stole the checks.  The Court is only concluding that L. Chapman may ask D. Chapman about the stolen checks on cross-examination.  D. Chapman and the United States are free to say that she had authority to cash the checks.  It will be up to the jury to decide whom to believe.

The "second category" arises when, "although some cross-examination of a prosecution witness was allowed, the trial court did not permit defense counsel to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." Id. at 19 (quotations omitted). Put another way, confrontation problems arise in the second category of cases when cross-examination restrictions "effectively emasculate the right of cross-examination itself." Id. (quoting Smith v. Illinois, 390 U.S. 129, 131, . . . (1968)).

United States v. Gutierrez de Lopez, 761 F.3d 1123, 1139-40 (10th Cir. 2014)(alteration omitted). The Court will not prohibit L. Chapman from confronting D. Chapman; thus, only the second category is potentially implicated.

Even though "'cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested,'" "a district court may exercise its discretion through reasonable limits on the scope of questioning." United States v. Robinson, 583 F.3d 1265, 1274 (10th Cir. 2009)(alterations omitted)(quoting Davis v. Alaska, 415 U.S. 308, 316 (1974)). "The Confrontation Clause guarantees only effective cross-examination, it does 'not guarantee cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" United States v. Lamb, 99 F. App'x at 846 (quoting Delaware v. Fensterer, 474 U.S. at 20). "'Effective cross-examination only requires that the trial judge not limit the scope of cross-examination so that it prevents the jury from having sufficient information to make a discriminating appraisal of the relevant issue.'" United States v. Lamb, 99 F. App'x at 846 (internal quotation marks omitted)(quoting Miranda v. Cooper, 967 F.2d 392, 402 (10th Cir. 1992)). The Supreme Court distinguishes between cross-examination limitations that prevent a defendant from asking direct, pointed questions concerning bias, prejudice, or ulterior motives, and questions that generally attack a witness's credibility. See Davis v. Alaska, 415 U.S. at 316.

In <u>Davis v. Alaska</u>, the Supreme Court distinguished between a "general attack" on witness credibility and a more particular attack "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand." <u>Davis</u>, 415 U.S. at 316, . . . ; <u>see also</u> <u>Boggs v. Collins</u>, 226 F.3d 728, 736-37 (6th Cir. 2000).   Only the latter form of questioning is clearly protected under the Sixth Amendment. <u>Id.</u> at 316, 320 . . . . It is within the trial court's discretion to limit more general attacks on the witnesses' credibility. <u>See</u> <u>Quinn v. Haynes</u>, 234 F.3d 837, 845 (4th Cir. 2000); <u>Boggs</u>, 226 F.3d at 739; <u>Hogan v. Hanks</u>, 97 F.3d 189, 191 (7th Cir. 1996); <u>United States v. Bartlett</u>, 856 F.2d 1071, 1088-89 (8th Cir. 1988); <u>Hughes v. Raines</u>, 641 F.2d 790, 793 (9th Cir. 1981); <u>Mills v. Estelle</u>, 552 F.2d 119, 122-23 (5th Cir. 1977); <u>see also</u> <u>Davis</u>, 415 U.S. at 321 . . . (Stewart, J., concurring)("I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions.").   It is therefore acceptable under <u>Davis</u> for the trial court to impose reasonable restrictions on this type of cross-examination. 415 U.S. at 316 . . . .

<u>Dalton v. Dinwiddie</u>, 273 F. App'x 724, 727 (10th Cir. 2008)(unpublished).

Here, L. Chapman does not seek to introduce evidence of the alleged theft to advance a directed attack that will reveal some bias, prejudice, or ulterior motive. <u>See</u> <u>Dalton v. Dinwiddie</u>, 273 F. App'x at 727.   Instead, he seeks to introduce the evidence to attack D. Chapman's general credibility. <u>See</u> Response ¶ 8, at 5.   L. Chapman states in his Response:

Here, a critical component of Mr. Chapman's defense to the charges in the information is exploring Ms. Doe's misconduct by cross-examination to demonstrate her mendacity.   Opening Ms. Doe's credibility to relevant questions allows the jury to more fully decide if it should believe her.   Likewise, the jury here could plausibly conclude that if Ms. Doe had no qualms about deceiving Mr. Chapman by embezzling and by stealing (and, while not a subject of the prosecution's motion in limine, by injuring herself to make the confrontation with Mr. Chapman appear more physical than it was), she might be equally undisturbed about giving false testimony at a trial.

Response ¶ 8, at 5 (citation omitted).   Because L. Chapman's proposed cross-examination concerns only D. Chapman's general credibility, the Court has more discretion in limiting his questioning. <u>See</u> <u>Dalton v. Dinwiddie</u>, 273 F. App'x at 727.

Additionally, evidence concerning the alleged theft is irrelevant in this case.  "The Confrontation Clause does not require the admission of potentially inflammatory and irrelevant testimony when a defendant has other avenues to attack a witness's credibility." United States v. Oliver, 278 F.3d 1035, 1041 (10th Cir. 2001).  Theft without some element of deceit or fraud is not indicative of untruthfulness or dishonesty. See United States v. Sipe, 388 F.3d at 486 n.40. L. Chapman does not contend that the D. Chapman's alleged theft is somehow connected to the events underlying the charges against him, and the Court is hard pressed to believe that an alleged theft in Abilene sheds light on the facts underlying an alleged assault in Albuquerque. Furthermore, the Court will permit L. Chapman to cross examine D. Chapman on a number of other issues that affect her credibility.  The Court will permit him to introduce evidence of D. Chapman's prior convictions and will permit him to ask D. Chapman on cross-examination about the alleged stolen check.  The alleged stolen items is not only irrelevant, but L. Chapman has other, relevant means to attack D. Chapman's credibility.  L. Chapman contends that the Court may violate his Sixth Amendment rights by "prohibit[ing] him from engaging in otherwise appropriate cross-examination."  Response ¶ 6, at 4 (alterations omitted)(internal quotation marks omitted).  Questions concerning the alleged theft, however, are not appropriate cross-examination questions.  In the end, even a defendant in a criminal case cannot bring everything her or she wants into a case; the Court has some discretion, under the Sixth Amendment, to limit cross-examination.

Evidence about the alleged theft would be used only to attack D. Chapman's general credibility; it is irrelevant in this case; and it is not appropriate cross-examination material. Moreover, L. Chapman has other means to attack D. Chapman's credibility that is relevant and

admissible.  For these reasons, limiting L. Chapman's cross-examination of D. Chapman does violate his Sixth Amendment rights

**IT IS ORDERED** that the United States Motion *In Limine*, filed October 23, 2014 (Doc. 63), is granted in part and denied in part.  Defendant Leslie Chapman may introduce at trial evidence that Dana Chapman has been convicted of theft by check.  He may also ask D. Chapman on cross examination about the checks that D. Chapman allegedly stole and cashed. L. Chapman may not, however, introduce evidence that D. Chapman allegedly stole items from their house in Abilene, Texas.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
   United States Attorney
William J. Pflugrath
Linda Mott
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Stephen P. McCue
   Federal Public Defender
Marc H. Robert
Kari Converse
   Assistant Federal Public Defenders
Albuquerque, New Mexico

    *Attorneys for the Defendant*