**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                          No. CR 14-1065 JB

LESLIE CHAPMAN,

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before Court on the Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b), filed October 22, 2014 (Doc. 58)("Notice").  The Court held a hearing on October 28, 2014.  The primary issues are: (i) whether the Court should seal the Notice or unseal the briefing associated with the United States' Sealed Motion *In Limine*, filed October 23, 2014 (Doc. 63)("Motion in Limine"); (ii) whether Plaintiff United States of America may introduce evidence of prior incidents of conduct to show Defendant Leslie Chapman's motive; and (iii) whether the United States may, after L. Chapman opens the door by introducing evidence of his character, introduce evidence of L. Chapman's character for being aggressive and controlling.  Because the parties' interests in sealing the Notice and the Motion in Limine do not outweigh the public's interest in having them made public, the Court will unseal the briefing associated with the Motion in Limine.  Evidence of the prior incidents is relevant to showing L. Chapman's motive only for propensity purposes.  The Court will, accordingly, prohibit the United States from introducing evidence of the prior incidents.  Once L. Chapman opens the door, by introducing evidence of his character, the United States may, in the form of opinion and reputation evidence, rebut L. Chapman's character evidence.  The United States may

also ask L. Chapman's character witnesses, on cross-examination, about specific instances of conduct.  The Court will, therefore, grant in part and deny in part the United States' requests in the Notice.

## FACTUAL BACKGROUND

In the Notice, the United States sets forth several incidents that occurred before the charged incident that is alleged in the Amended Information, filed April 4, 2014 (Doc. 12)("Amended Information").  See Notice at 3.  First, the United States asserts that there are several incidents in which L. Chapman expressed his anger toward D. Chapman and toward others.  See Notice at 3.  Second, the United States asserts that, in August, 2013, D. Chapman reported to the police that L. Chapman became physically intimidating towards her.  See Notice at 3.  Third, the United States contends that L. Chapman removed the battery cables from D. Chapman's vehicle to prevent her from leaving their home.  See Notice at 3.  Finally, the United States asserts that L. Chapman would remove all vehicle keys from their residence to prevent D. Chapman from leaving.  See Notice at 3.

The Amended Information alleges that L. Chapman, on or about January 26, 2014, "unlawfully touch[ed] and appl[ied] force to the person of a household member[, his wife -- Dana Chapman ("D. Chapman") --] with intent to injure" her at the "Veterans Affairs Medical Center in Bernalillo County, in the District of New Mexico."  Amended Information at 1.  In doing the "unlawful touch[ing]," L. Chapman allegedly caused D. Chapman "temporary disfigurement and temporary loss and impairment of the function of" a "member of [her] body."  Amended Information at 1.  The Amended Information also alleges that L. Chapman prevented, obstructed, and delayed the "sending, transmitting, conveying and delivering" of a "message, communication and report by and through telephone."  Amended Information at 1-2.  The

Amended Information further alleges that L. Chapman knowingly possessed and carried a firearm "on the property of the Veterans Affairs Medical Center, Albuquerque, with no official purpose."  Amended Information at 1.

The United States elaborated on the relevant facts in the Notice.  See Notice at 1-2.  It asserts that, around 8:15 p.m., on January 26, 2014, the Veteran Affairs Police were notified of a 911 call in which the caller reported a physical disturbance in Building 54 of the Veterans Administration complex ("VA Hospital").  Notice at 1.  The United States contends that Building 54 is used as a hoptel[1] for out-of-state visitors, who are receiving outpatient medical services at the VA Hospital, and that, when the police arrived at Building 54, they were directed to the room of Susan Richards, who was the person that called 911, where they discovered D. Chapman.  See Notice at 1-2.  The United States explains that Richards told the officers that she let D. Chapman into her room after she heard D. Chapman banging on her door and screaming in the hallway, outside her room, and that L. Chapman was "after her."  Notice at 1-2.

The United States argues that D. Chapman was visibly upset, crying, and had apparent injuries, and that she told the officers that L. Chapman assaulted her in their room in Building 54.  See Notice at 2.  The United States contends that D. Chapman told the officers that she tried to leave their room, which is next to Richards' room, but that L. Chapman would not let her leave, and that L. Chapman had questioned her about why she did not answer his telephone calls.  See Notice at 2.  The United States contends that, when D. Chapman told him that she was on the telephone with her mother, L. Chapman did not believe her.  See Notice at 2.  The United States asserts that D. Chapman called her mother to verify her story, and that, while D. Chapman was

---

[1]Hoptel appears to stand for hospitality hotel.  See Hoptel, Charley Norwood VA Medical Center, http://www.augusta.va.gov/HopTel.asp (last visited Oct 31, 2014)("The Hospitality Hotel (HopTel) Program is designed to meet the needs of Veterans who have to travel long distances to early morning appointments.").

speaking her mother, L. Chapman grabbed the telephone from her hand and broke the telephone. See Notice at 2. The United States maintains that D. Chapman also told the officers that L. Chapman took her keys in an attempt to keep her from leaving and that the officers noted that D. Chapman was afraid of potentially coming into contact with L. Chapman if she left Richards' room. See Notice at 2.

The United States asserts that the officers went next door to L. Chapman's room, where he was at that time, and that they knocked on the door, announced their presence, and instructed L. Chapman to open the door with his hands on his head. See Notice at 2. The United States contends that the officers opened the door and found L. Chapman holding his nose while appearing to be visibly calm. See Notice at 2. It states that the officers asked L. Chapman if he was injured, and L. Chapman told them that he was not, but that he had recent nasal surgery and was cleaning his nose. See Notice at 2. The United States maintains that L. Chapman told the officers that he was in pain, and that D. Chapman had struck him in the nose, ribs, and face, but the officers noted that L. Chapman had only a small abrasion on his cheek. See Notice at 2.

## PROCEDURAL BACKGROUND

The United States filed the Notice on October 22, 2014. See Notice at 1. It notes that, during its investigation, it interviewed several people who know L. Chapman, and that the interviews revealed several incidents during which L. Chapman expressed his rage at D. Chapman and at others whom he perceived as helping her. See Notice at 3. The United States asserts that some people expressed concern about L. Chapman's anger and about their own safety. See Notice at 3. The United States contends that it knows of three specific incidents. See Notice at 3

The first, from August, 2013, involves D. Chapman reporting to the police that L. Chapman was physically intimidating towards her.  See Notice at 3.  During the second incident, one of D. Chapman's neighbors found that she was unable to start her vehicle.  See Notice at 3.  The neighbor inspected the vehicle and discovered that its battery cables had been removed.  See Notice at 3.  L. Chapman later admitted that he removed the vehicle's battery cables.  See Notice at 3.  In the final incident or incidents -- it is unclear from the Notice if this happened once or on several occasions -- L. Chapman removed all of the vehicle keys from their home to prevent D. Chapman from leaving.  See Notice at 3.

The United States refuses to concede that these incidents are prior bad acts under rule 404(b) of the Federal Rules of Evidence, but, out of caution, seeks the Court's permission to present testimony about the incidents in the event that L. Chapman seeks to introduce evidence of his character for being passive, non-violent, non-controlling, or non-intimidating.  See Notice at 3.  It contends that rule 404(b) is a rule of inclusion and that, unless the other-act evidence is introduced to prove criminal propensity or is unfairly prejudicial, the Court should admit the evidence.  See Notice at 4.  Concerning the evidence's relevance, the United States argues that, because L. Chapman has indicated that he will assert a self-defense argument, the prior act evidence is relevant to show that L. Chapman has previously tried to control D. Chapman through physical threats and controlling actions.  See Notice at 5-6.  The United States asserts that this "evidence is relevant to assist the jury in answering one of the core issues that will be before the jury -- the veracity of the Defendant's own statement."  Notice at 6.

Concerning the evidence's prejudicial effect, the United States contends that "[e]vidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury or otherwise tends to affect adversely the jury's attitude toward the

defendant," apart from the jury's determination of the defendant's guilt or innocence of the charged crime. Notice at 6. The United States admits that the evidence is prejudicial, but maintains that it is not unfairly so. See Notice at 6. It contends that the prior-act evidence shows that L. Chapman found himself in a situation in which he could not control D. Chapman to establish his motive for assaulting her. See Notice at 6-7.

The United States further contends that, if L. Chapman first opens to the door to his character as a non-violent person, evidence of the prior incidents is admissible under rule 404(a)(1) of the Federal Rules of Evidence. See Notice at 7. The United States argues that, after a defendant offers evidence of his or her own character or that of the victim, the United States may rebut that evidence by introducing contrary character evidence. See Notice at 7 (citing Perrin v. Anderson, 784 F.2d 1040, 1044 (10th Cir. 1986)). It states that, if L. Chapman first opens the door, it should be able to ask L. Chapman, or any other reputation witness, about his reputation as an aggressive, controlling person as well as ask about specific instances of conduct. See Notice at 7-8 (citing Fed. R. Evid. 405). The United States asserts that, under rule 403 of the Federal Rules of Evidence, the impeachment value of the evidence outweighs any prejudicial effect. See Notice at 8.

L. Chapman responded to the Notice on October 27, 2014. See Mr. Chapman's Sealed Response to the Prosecution's 404 Notice and Request to Seal, filed October 27, 2014 (Doc. 66)("Response"). He contends that the United States publicly filed the Notice, while at the same time filing the Motion in Limine under seal, which seeks to preclude him from cross-examining D. Chapman about incidents which reflect poorly on her character for truthfulness. See Response at 1. L. Chapman states that, because it is unfair for the United States to make publicly available negative information about himself, while sealing negative

information about D. Chapman, the Court should either seal the Notice or should make the Motion in Limine publicly available.  See Response at 1-2.

L. Chapman contends that the United States Court of Appeals for the Tenth Circuit faced a similar situation in United States v. Commanche, 577 F.3d 1261 (10th Cir. 2009), where it held that bad-act evidence could not be introduced solely to prove that the defendant acted in conformity with a particular character trait.  See Response at 3.  L. Chapman argues that the only disputed issue in United States v. Commanche was whether the defendant acted in self-defense and that the Tenth Circuit held that prior convictions of aggravated battery demonstrated nothing about the defendant's intent, but simply showed that he was violent.  See Response at 3.

L. Chapman states that, while the United States asserts that the prior-act evidence is being offered to show his motive in assaulting D. Chapman, the United States fails to explain its hypothesis showing how the evidence makes his motive more or less likely.  See Response at 5.  He contends that the United States is trying to prove disputed facts through an alleged mental state, which boils down to using the evidence for purely propensity purposes.  See Response at 5.  L. Chapman argues that motive evidence typically overlaps with the res gestae of the offense and that bad acts that show motive typically occur close in time to the offense.  See Response at 7.  He maintains that the United States does not assert the prior acts' time frame, other than stating that one occurred five months earlier, and that courts normally require motive evidence to be temporally close to the charged crime.  See Response at 7-8.

L. Chapman maintains that the evidence is not relevant, because it does not make a fact at issue more or less probable.  See Response at 9.  He states that the evidence does not provide an indication of motive and that "it is a general character assassination" by the United States.  Response at 9.  L. Chapman argues that, even if the evidence were admissible, it would be

unfairly prejudicial, because it would "permit trial by character assassination" and "would require mini-trials over unrelated incidents."  Response at 10.  L. Chapman asserts that, if the United States is allowed to bring in a cadre of D. Chapman's friends and neighbors to testify about what they think of L. Chapman, the testimony would confuse the jury about whether it is to decide that L. Chapman is a nice person or whether he committed the charged crimes.  See Response at 10.  L. Chapman maintains that the jury may use the evidence to infer that, because he yelled at D. Chapman in the past, he likely committed the charged crimes.  See Response at 10.  He states that the evidence may distract the jury from answering the pertinent question: whether he committed the alleged crimes.  See Response at 11-12.  L. Chapman asserts that the evidence creates the concern that the jury may explicitly or subconsciously apply a lower standard of proof if they think he is a bad person.  See Response at 12.

The Court held a hearing on October 28, 2014.  See Transcript of Hearing (taken Oct. 28, 2014)("Tr.").[2]  The Court began the hearing by telling the parties that it was inclined to prohibit the admission of the prior incidents under rule 404(b); that, if L. Chapman opened the door, it was inclined to permit the United States to introduce character evidence in the form of reputation or opinion evidence; and that, if L. Chapman presents character witnesses, it was inclined to allow the United States to, on cross-examination, ask the witnesses about specific instances of conduct concerning the pertinent character trait.  See Tr. at 2:1-8:19 (Court).  The United States said that it was not substantially opposed to the Court's inclination, but wanted to clarify that the battery cable and key incidents were similar to the charged incident, because, on the night of the alleged assault, L. Chapman hid D. Chapman's keys and wallet under a mattress.  See Tr. at

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may have slightly different page and/or line numbers.

8:23-9:11 (Pflugrath).  It agreed, however, that it should not be allowed to introduce evidence of specific instances of conduct or of reputation unless L. Chapman first opens the door.  See Tr. at 8:23-9:15 (Pflugrath).  The United States noted that, if it believes that L. Chapman opens the door, it will first ask to approach the bench and will then ask the Court to rule whether it may proceed with the evidence.  See Tr. at 10:15-18 (Pflugrath).  L. Chapman also stated that he had no issue with the Court's inclination.  See Tr. at 9:21-22 (Converse).  He addressed the key-hiding incident by arguing that D. Chapman was intoxicated on the night of the incident, so he hid the keys to prevent her from driving while intoxicated.  See Tr. at 9:23-10:16 (Converse).

## LAW REGARDING RULE 404(b)

Under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith.  See Fed. R. Evid. 404(b).  Rule 404(b) provides:

> **(b)**     **Crimes, Wrongs, or Other Acts.**
>
> > **(1)**     **Prohibited Uses.**  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> >
> > **(2)**     **Permitted Uses; Notice in a Criminal Case.**    This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On request by a defendant in a criminal case, the prosecutor must:
> >
> > > **(A)**     provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
> > >
> > > **(B)**     do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

- 9 -

Fed. R. Evid. 404(b).  "In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too."  Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2011 WL 6739166, at *5 (D.N.M. Nov. 1, 2011)(Browning, J.).  "The rule, however, has a number of 'exceptions'[3] -- purposes for which such evidence will be admissible."  Wilson v. Jara, 2011 WL 6739166, at *5.  Those purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  See Fed. R. Evid. 404(b).  The Supreme Court of the United States has enunciated a four-part process to determine whether evidence is admissible under rule 404(b).  See Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  The Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination

---

[3]In a recent en banc opinion, the United States Court of Appeals for the Seventh Circuit stated that describing rule 404(b)(2) as exceptions to 404(b)(1)'s broad rule is a misconception, because subsection (2) permits the evidence to be used for other purposes that are not described in subsection (1).  See United States v. Gomez, 763 F.3d 845, 855 n.3 (7th Cir. 2014)(en banc).

> A common misconception about Rule 404(b) is that it establishes a rule of exclusion subject to certain exceptions.  That's not quite right.  The text of the rule does not say that propensity evidence is inadmissible *except* when it is used to prove motive, opportunity, intent, etc.  Rather, it says that propensity evidence -- other-act evidence offered to prove a person's character and inviting an inference that he acted in conformity therewith -- is *categorically* inadmissible.  Fed. R. Evid. 404(b)(1). But the rule also acknowledges that there may be "another" use for other-act evidence -- i.e., a different, *non-propensity* use.  Fed. R. Evid. 404(b)(2).  So it's technically incorrect to characterize the purposes listed in subsection (2) as "exceptions" to the rule of subsection (1).  The Rules of Evidence do contain some true exceptions to the rule against propensity evidence, but they're found elsewhere -- notably in Rules 412 through 415, which are limited to sexual-assault cases.   In contrast, the purposes enumerated in subsection (2) of Rule 404(b) simply identify situations in which the rule of subsection (1) by its terms does not apply.

United States v. Gomez, 763 F.3d at 855 n.3 (emphases in original).

of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)).  See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. at 691-92).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of his character.  See United States v. Lucas, 357 F.3d 599, 611 (6th Cir. 2004)(citing United States v. Dudek, 560 F.2d 1288 (6th Cir. 1977)); 22B C. Wright & K Graham, Federal Practice and Procedure: Evidence § 5239, at 428, 436-37, 439 (1991).  In United States v. Phillips, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s limitations and requirements, that the rule addresses two main policy concerns: (i) that the jury may convict a "bad man" who deserves to be punished, not because he is guilty of the crime charged, but because of his prior or subsequent misdeeds; and (ii) that the jury will infer that, because the accused committed other crimes, he probably committed the crime charged.  United States v. Phillips, 599 F.2d at 136.  "'[W]hen other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has 'the potential impermissible side effect of allowing the jury to infer criminal propensity.'"  United States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007)(quoting United States v. Cherry, 433 F.3d 698, 701 n.3 (10th Cir. 2005)).  See United States v. Romero, No. CR 09-1253 JB, 2011 WL 1103862, at *12 (D.N.M. March 9, 2011)(Browning, J.)("Rule 404(b) evidence almost always has some propensity evidence.").

When bad act evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act." United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)(alterations omitted).   The Tenth Circuit has also stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom."   United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)).

> The Government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts.  In addition, the trial court must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or stating Rule 404(b) will not suffice.

United States v. Romine, 377 F. Supp. 2d 1129, 1132 (D.N.M. 2005)(Browning, J.)(quoting United States v. Kendall, 766 F.2d at 1436).  Rules 401 to 403 and the conditional relevancy rules in rule 104(b) govern the applicable burden the proponent must meet to successfully offer evidence under rule 404(b).  See Huddleston v. United States, 485 U.S. at 686-91.

The Tenth Circuit has recognized the probative value of uncharged, unrelated acts to show motive, intent, and knowledge, when the uncharged, unrelated acts are similar to the charged crime and sufficiently close in time.  See United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)(finding the district court did not abuse its discretion when it admitted evidence about an event over one year after a defendant's arrest); United States v. Bonnett, 877 F.2d 1450, 1461 (10th Cir. 1989)(holding that evidence about events over a year after the charged conduct was not "too remote in time and unrelated to the transactions with which he was charged").  This similarity may be shown through "physical similarity of the acts or through the 'defendant's

indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'" United States v. Queen, 132 F.3d 991, 996 (4th Cir. 1997)(quoting United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978)).  See United States v. Bonnett, 877 F.2d at 1461 ("The closeness in time and the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion.").  The more similar the act or state of mind, the more relevant the evidence becomes.  See United States v. Queen, 132 F.3d at 996.  Moreover, when establishing probative value, although the uncharged crime must be similar to the charged offense if it is unrelated to the charged offense, it need not be identical.  See United States v. Gutierrez, 696 F.2d 753, 755 (10th Cir. 1982).

In United States v. Tan, 254 F.3d 1204 (10th Cir. 2001), the Honorable LeRoy C. Hansen, United States District Judge for the District of New Mexico, excluded, in a second-degree murder case, evidence that the defendant had previously been convicted of driving while intoxicated.  See 254 F.3d at 1206-07.  The murder charge rose out of the defendant driving a vehicle while intoxicated and striking a motorcyclist with his vehicle.  See 245 F.3d at 1206.  Judge Hansen concluded that evidence of the other convictions would show only that the defendant had a propensity for drunk driving and would be more prejudicial than probative.  See 254 F.3d at 1207.  The Tenth Circuit reversed.  In an opinion that the Honorable Stephen H. Anderson, United States Circuit Judge for the Tenth Circuit, wrote, and Judges Seymour and Kelly joined, the Tenth Circuit held that, because second-degree murder requires proof of malice, the prior convictions were probative to the proper purpose of proving malice or

intent, reasoning that a person who is convicted of drunk driving is more aware of the substantial

risks and harm that it can cause to others.  See 254 F.3d at 1210-11.[4]

---

[4]Before United States v. Gomez, the Seventh Circuit used a four-part test to determine the admissibility of 404(b) evidence; the test included:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

United States v. Gomez, 763 F.3d at 852 (quoting United States v. Zapata, 871 F.2d 616, 620 (7th Cir. 1989), abrogated by United States v. Gomez, 763 F.3d at 845).  In United States v. Gomez, the Seventh Circuit abandoned its traditional four-part test in favor of a "straightforward rules-based approach" that it articulated to "produce clarity and better practice in applying the relevant rules of evidence."  763 F.3d at 853.  One of the main changes in the Seventh Circuit's approach is that the relevance, similarity, and timing of the other act depend on the particular theory of admissibility.  See 763 F.3d at 854.  The Seventh Circuit also focused on the purpose of the other-act evidence to ensure that its relevance does not require a propensity inference.  See 763 F.3d at 856 ("[T]he district court should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose -- or more specifically, how the evidence is relevant without relying on a propensity inference."  (emphasis in original)).  For rule 403's balancing test, the Seventh Circuit focused on how contested an issue is to determine how relevant the other-act evidence is to the issue and to the case: the more disputed the issue, the more relevant the evidence.  See 763 F.3d at 859-60.  For example, for general intent crimes, evidence showing intent is likely irrelevant, unless the defendant puts intent at issue, but, for specific intent crimes, other-act evidence is more relevant to showing intent.  See 763 F.3d at 857-59.

> [W]hen intent is not 'at issue' -- when the defendant is charged with a general-intent crime *and* does not meaningfully dispute intent -- other-act evidence is not admissible to prove intent because its probative value will always be substantially outweighed by the risk of unfair prejudice.  In contrast, when intent *is* "at issue" -- in cases involving specific-intent crimes or because the defendant makes it an issue in a case involving a general-intent crime -- other-act evidence *may* be admissible to prove intent, but it must be relevant without relying on a propensity inference, and its probative value must not be substantially outweighed by the risk of unfair prejudice.

763 F.3d at 859 (emphasis in original).  Finally, the Seventh Circuit held that district courts should draft customized jury instructions for the other-act evidence and that they should hesitate

before giving a limiting instruction unless one of the parties requests one.  See 763 F.3d at 860-61.

The Tenth Circuit has consistently used a four-part test that is similar, but slightly different than the Seventh Circuit's, and the Tenth Circuit's test provides that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d at 762.  Because "only the en banc court can overrule the judgment of a prior panel," United Food & Commercial Workers Union, Local 1564 of N.M. v. Albertson's, Inc., 207 F.3d 1193, 1198 (10th Cir. 2000), this four-part test binds the Tenth Circuit -- and, most importantly here, all district courts within the Tenth Circuit -- until the Tenth Circuit, sitting en banc, rules otherwise, see Stephen A. Saltzburg, Professor, George Washington University Law School, The Second Best Federal Bar Seminar Ever: Evidence (May 1, 2015)(noting that United States Courts of Appeals must go en banc to change their four-part tests).  Moreover, the Tenth Circuit, and every United States Court of Appeals with a four-part test, derived its test from the "four-step framework" that the Supreme Court set forth in Huddleston v. United States.   United States v. Record, 873 F.2d 1363, 1374-75 (10th Cir. 1989) ("Further, Huddleston provides a four-step framework for avoiding such prejudice, which will greatly simplify the task of a trial court in this circuit, as well as a reviewing court, in analyzing the admission of Rule 404(b) evidence.").  In Huddleston v. United States, the Supreme Court listed four rules of evidence that protect defendants from being unfairly prejudiced by evidence introduced under rule 404(b):

> We share petitioner's concern that unduly prejudicial evidence might be introduced under Rule 404(b).  We think, however, that the protection against such unfair prejudice emanates not from a requirement of a preliminary finding by the trial court, but rather from four other sources: first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402 -- as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

Huddleston v. United States, 485 U.S. at 691-92 (citations omitted)(footnote omitted).

While the Seventh Circuit abandoned its old four-part test, its new "rules-based approach" still considers each rule of evidence that the Supreme Court says protects litigants from unfair prejudice.  United States v. Gomez, 763 F.3d at 853-61 (applying rules 104, 105,

## LAW REGARDING THE RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence." Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403). "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")). "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'" United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012) (Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note). Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible. See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

---

401, 402, 403, and 404(b) of the Federal Rules of Evidence). Indeed, the Seventh Circuit described its change as "less a substantive modification than a shift in paradigm" to "produce clarity and better practice in applying the relevant rules of evidence." 763 F.3d at 853. Because the Court of Appeals cannot abandon a Supreme Court case, any change the Tenth Circuit makes to its current four-part test -- which would require the en banc court -- must still apply the four factors -- i.e., the rules of evidence -- from Huddleston v. United States, even if the factors are not applied in the same mechanical fashion that the current test requires.

cumulative evidence." Fed. R. Evid. 403. Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice. See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989). "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(internal quotation marks omitted). "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000). The "[e]xclusion of otherwise admissible evidence under Rule 403 'is an extraordinary remedy and should be used sparingly.'" United States v. Smalls, 752 F.3d 1227, 1238 n. 4 (10th Cir. 2014)(quoting United States v. Tan, 254 F.3d at 1211).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980). As the Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(citation omitted).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence

of the crime charged.   See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999).

"Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case."

United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis,

344 F.3d 1057, 1067 (10th Cir. 2003)).   Rather, "[t]o be unfairly prejudicial, the evidence must

have 'an undue tendency to suggest decision on an improper basis, commonly, though not

necessarily, an emotional one.'"   United States v. Caraway, 534 F.3d at 1301 (emphasis in

original)(quoting Fed. R. Evid. 403 advisory committee's notes).

## LAW REGARDING RULE 608 EVIDENCE

"Rule 608 of the Federal Rules of Evidence provides certain mechanisms for attacking

witnesses' character for truthfulness or untruthfulness."   Montoya v. Sheldon, No. CIV 10-0360

JB/WDS, 2012 WL 5476882, at *7 (D.N.M. Oct. 31, 2012)(Browning, J.).   See United States v.

Huerta-Rodriguez, No. CR 09-3206 JB, 2010 WL 3834061, at *7 (D.N.M. 2010)

(Browning, J.)(same).   In the criminal context, the Tenth Circuit has stated that "'defense counsel

should ordinarily be given wide latitude when cross examining a witness about credibility or

bias.'"   United States v. Rosario Fuentez, 231 F.3d 700, 704 (10th Cir. 2000)(alteration

omitted)(quoting United States v. DeSoto, 950 F.2d 626, 629 (10th Cir. 1991)).   Nevertheless,

"[o]ne key aspect of this rule is that its application is explicitly within the discretion of the

district court."   Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1114 (10th Cir. 2001).

See United States v. Rosario Fuentez, 231 F.3d at 704 (10th Cir. 2000)("The trial court . . .

retains discretion to reasonably limit cross-examination.")(internal quotations omitted)(quoting

United States v. DeSoto, 950 F.2d at 629).

Rule 608(a) states:

**(a)**      **Reputation or Opinion Evidence.** A witness's credibility may be attacked
           or supported by testimony about the witness's reputation for having a

character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Fed. R. Evid. 608(a).  A witness' truthfulness or untruthfulness may be attacked by opinion or reputation evidence without ever proffering evidence of a good character for truthfulness.  See United States v. Holt, 486 F.3d 997, 1002 (7th Cir. 2007)(noting that, while it is within the trial court's discretion to prohibit cross-examination of a police officer whether he had been suspended to call into question his credibility, the plaintiff "could have used Rule 608(a) and called a member of the department to testify directly about his opinions or reputation of [the credibility of the officer].").  To establish a proper foundation for the opinion or reputation testimony, a witness must show: "such acquaintance with the person under attack, the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded."  United States v. Rios, 92 F.3d 1519, 1529 (10th Cir. 1996)(quoting United States v. Bedonie, 913 F.2d 782, 802 (10th Cir. 1990)), overruled on other grounds by, United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006).

Rule 608(b) provides the rule for admission of specific instances of conduct:

**(b)    Specific Instances of Conduct.** Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

**(1)**    the witness; or

**(2)**    another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b).  "Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court,

however, only to the extent the misconduct reflects on the witness's character for truthfulness."

United States v. Beltran-Garcia, 338 F. App'x 765, 770 (10th Cir. 2009)(unpublished).[5]

"Though Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence." United States v. Beltran-Garcia, 338 F. App'x at 770.  The United States Court of Appeals for the District of Columbia Circuit has noted:

> Although 608(b) of the Federal Rules of Evidence does state that specific instances of misconduct may be admissible to impeach a witness, that rule does not require or imply that every negative bit of evidence existing concerning a witness may be dragged into a case no matter how remote or minor the alleged misconduct.

United States v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993).

Rule 608 was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness," and not "to bar extrinsic evidence for bias, competency and

---

[5]United States v. Beltran-Garcia is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that United States v. Beltran-Garcia, United States v. Moncayo, 440 F. App'x 647 (10th Cir. 2011)(unpublished), United States v. Embry, 452 F. App'x 826 (10th Cir. 2011) (unpublished), and Clark v. New Mexico Department of Corrections, 58 F. App'x 789 (10th Cir. 2003)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

contradiction impeachment."  Fed. R. Evid. 608 advisory committee's note to 2003 amendment.

The rule precluding the

> admission of extrinsic evidence of specific instances of conduct of the witness when offered for the purpose of attacking credibility . . . does not apply, however, when extrinsic evidence is used to show that a statement made by a defendant on direct examination is false, even if the statement is about a collateral issue.

United States v. Fleming, 19 F.3d 1325 (10th Cir. 1994)(citing 27 Charles A. Wright & Victor J.

Gold, Federal Practice and Procedure: Evidence § 5096, at 546-47 (1990)).    This doctrine,

"known as 'specific contradiction,'" allows such impeachment "even if the evidence elicited . . .

ordinarily might be collateral or otherwise inadmissible."   United States v. Crockett, 435 F.3d

1305, 1313 (10th Cir. 2006)(citing Mason v. Okla. Turnpike Auth., 115 F.3d 1442, 1456 (10th

Cir. 1997), overruled on other grounds by, TW Telecom Holdings Inc. v. Carolina Internet Ltd.,

661 F.3d 495 (10th Cir. 2011)).   See United States v. Cerno, 529 F.3d 926, 944 (10th

Cir. 2008)("If there is evidence that specifically contradicts a witness's testimony, impeachment

evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for

lying.").[6]

It is generally true that "a party may inquire into specific instances of conduct by

extrinsic evidence only on cross-examination of a witness in challenging the truthfulness of his

testimony."   Bennet v. Longacre, 774 F.2d 1024, 1027 (10th Cir. 1985).   Where a party has

already attacked a witness' credibility by cross-examination on specific instances of conduct and

---

[6]Professors Charles Alan Wright and Victor James Gold recognize that, before the 2003 amendment, the "greater weight of authority" held that "Rule 608 regulates only the admissibility of character evidence and that subdivision (b) should not be read literally." 28 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure § 6117, at 86 (1993 & Supp. 2011).  Professors Wright and Gold confirm that, as a result of the 2003 amendment, rule 608(b) "has been amended to make clear that it applies only to extrinsic evidence of conduct offered for the purpose of proving character for truthfulness or untruthfulness."  28 Wright & Gold, supra § 6117, at 14 (Supp. 2011).

the witness made a false statement on the stand, however, the party may provide extrinsic evidence to impeach that witness on re-direct or during a later direct examination.  See United States v. Embry, 452 F. App'x 826, 835 (10th Cir. 2011)(unpublished)(noting that "Rule 608(b)(1) . . . allows impeachment testimony . . . on direct or redirect examination . . . where a party already has attacked the credibility of a witness by referring to specific instances of conduct").  When a witness makes a false statement while providing testimony, the opposing party is allowed to prove that lie by presenting rebuttal witnesses.  See United States v. Crockett, 435 F.3d at 1313 ("[W]hen a defendant makes a false statement during direct testimony, the prosecution is allowed to prove, either through cross-examination or by rebuttal witnesses, that the defendant lied as to that fact.").

It is "permissible impeachment to expose a witness's bias."  United States v. Baldridge, 559 F.3d 1126, 1135 (10th Cir. 2009)(citing United States v. Abel, 469 U.S. 45, 51 (1984)). "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."  United States v. Abel, 469 U.S. at 52.  Thus, because bias is never collateral, "it is permissible to [prove bias] by extrinsic evidence."  Montoya v. City of Albuquerque, No. CIV 03-0261 JB/RHS, 2004 WL 3426435, at *4 (D.N.M. May 18, 2004)(Browning, J.).  The Tenth Circuit describes bias, based on its definition at common law, as "the relationship between a witness and a party which might cause the witness to slant his testimony for or against the party."  United States v. Baldridge, 559 F.3d at 1135 (citing United States v. Abel, 469 U.S. at 52).[7]

---

[7]Prejudice is defined as "[a] preconceived judgment formed with little or no factual basis; a strong bias."  Black's Law Dictionary 1229 (9th ed. 2009).  See New Oxford American Dictionary 1378 (3d ed. 2010)("[P]reconceived opinion that is not based on reason or actual

## FIRST AMENDMENT CONCERNS ABOUT OPEN JUDICIAL PROCEEDINGS

The Tenth Circuit has characterized it as "clearly established that court documents are covered by a common law right of access." United States v. McVeigh, 119 F.3d 806, 814 (10th Cir. 1997). While documents are presumptively available to the public, however, they may be sealed "if the right to access is outweighed by the interests favoring nondisclosure." United States v. McVeigh, 119 F.3d at 814 (citing Nixon v. Warner Commc'ns, 435 U.S. 589, 602 (1978)). See Clark v. N.M. Dep't of Corr., 58 F. App'x. 789, 792 (10th Cir. 2003)(unpublished) (reversing district court's decision to unseal documents that revealed defendant's role as an undercover informant).

Neither the Supreme Court nor the Tenth Circuit has decided whether there is a First Amendment right of access to court documents or considered the scope of such a right. See Houchins v. KQED, Inc., 438 U.S. 1, 9 (1978)("This Court has never intimated a First Amendment guarantee of a right of access to all sources of information within government control."); United States v. Gonzales, 150 F.3d 1246, 1256 (10th Cir. 1998)("The Supreme Court has not yet ruled on 'whether there is a constitutional right of access to court documents and, if so, the scope of such a right.'" (quoting United States v. McVeigh, 119 F.3d at 812)). The Tenth Circuit has on several occasions, however, assumed without deciding that such a right exists, and found that certain documents fall outside the bounds of First Amendment principles

experiences . . . dislike, hostility. . . ."). Bias is defined as: "Inclination; prejudice; predilection." Black's Law Dictionary, supra, at 183. Although bias and prejudice in contemporary discourse may be used interchangeably, with courts and lawyers both asserting that one has bias for something and bias against, they historically have been and are often distinguished by saying that there may be "bias or prejudice." E.g., Nev. Comm'n on Ethics v. Carrigan, 131 S. Ct. 2343, 2349 (2011)(quoting 28 U.S.C. § 144, which makes "any 'personal bias or prejudice' a basis for recusal"). Bias is associated more with an informed reason for favoring a person and prejudice with an uninformed hostility toward a class of persons. Bias now appears to be all inclusive, covering prejudice, too, and prejudice covers bias if the preposition "for" follows. The terms have thus apparently lost any distinction.

and Supreme Court jurisprudence.  See United States v. Gonzales, 150 F.3d at 1256 (citing

United States v. McVeigh, 119 F.3d at 814 (rejecting media's request for access to suppressed

evidence); Lanphere & Urbaniak v. Colorado, 21 F.3d 1508, 1512-16 (10th Cir. 1994)(denying

law firm's commercially motivated request for names and contact information of persons

charged with misdemeanor driving infractions); United States v. Hickey, 767 F.2d 705, 709

(10th Cir. 1985)(rejecting defendant's request for access to his co-conspirator's sealed plea

bargain and case file)).

        In exercising its discretion to seal judicial records, the court weighs the interests of the

public, which are presumed paramount, against the interests the parties advance.  See Crystal

Grower's Corp. v. Dobbins, 616 F.2d 458, 461 (10th Cir. 1980).  In light of the paramount nature

of the public's interest, at least one other district court in the Tenth Circuit has required a party

wishing to seal a document "to demonstrate a public or private harm that is sufficient to justify

the sealing of the document."  Hatfield v. Price Mgmt. Co., No. CIV 04-2563 JWL/DJW, 2005

WL, 375665, at *1 (D. Kan. Feb. 16, 2005)(Waxse, J.).

        Similarly, in recognition "of the vital public interest in open judicial proceedings," the

United States Department of Justice endorses a policy generally opposing the closure of judicial

proceedings to the public.  28 C.F.R. § 50.9.  Pursuant to the Department of Justice's regulations,

closure generally is warranted only when it "is plainly essential to the interests of justice," or

when other policy concerns -- such as the need to protect national security or classified

information -- are present.  28 C.F.R. § 50.9(e).

## ANALYSIS

        The Court will grant in part and deny in part the United States' requests in the Notice.

The public's interest in having the Notice and the briefing associated with the Motion in Limine

disclosed outweighs the parties' interests in sealing them.  The Court will, thus, unseal the briefing associated with the Motion in Limine.  Because evidence of the prior incidents is relevant only for propensity purposes, the Court will exclude the evidence.  The United States may introduce testimonial evidence of L. Chapman's character, but only in the form of reputation or opinion evidence, and only if L. Chapman first opens the door by introducing evidence of his character.  The United States may not use specific instances of conduct to show L. Chapman's character, except that it may, on cross-examination of L. Chapman's character witnesses, ask about specific instances of conduct.

I.      **THE COURT WILL UNSEAL THE MOTION IN LIMINE.**

        The Court will unseal the Motion in Limine and the briefing associated with it. L. Chapman asks the Court to either seal the Notice or unseal the Motion in Limine.  See Response at 1-2.  The Court believes that the latter remedy is appropriate.  "There is a presumption that documents essential to the judicial process are to be available to the public, but they may be sealed when the public's right of access is outweighed by interests which favor nondisclosure."  Baroness Small Estates, Inc. v. Round Hill Cellars, No. CIV 10-01999 MSK/CBS, 2011 WL 6152969, at *7 (D. Colo. Dec. 12, 2011)(citing United States v. McVeigh, 119 F.3d at 811).  The Court concludes that the public's right of access outweighs the parties' interests in preventing disclosure.

        First, the Notice concerns incidents that portray L. Chapman in a bad light, but are not so damaging that the Court should preclude public disclosure.  Moreover, it is unclear what interests L. Chapman is asserting outweigh the public's interest in disclosure.  Concerning the United States sealing the Notice, L. Chapman states:

        It is curious that she would take such care not to taint a potential jury panel
        against her complaining witness, but would file a publicly available document

which lays out negative information abut [sic] Mr. Chapman, who is presumed innocent and whose liberty is on the line. If the negative information about the complaining witness is to be under seal, so should the information about Mr. Chapman.  Alternatively, [the Motion in Limine] and the response to it should be unsealed.

Response at 1-2.  L. Chapman's reference to tainting the jury pool suggests that his interest is in preventing the jury from being biased against him.  Because he is content with the Court keeping the Notice unsealed and unsealing the Motion in Limine, however, it appears that L. Chapman's asserted interest is: "If my dirty laundry is being aired, so should hers."  The Court finds these interests insufficient to justify sealing the Notice.

The Court recognizes the need to protect a criminal defendant's due-process rights to reduce the risk of a biased jury pool trying the criminal defendant.  There is not, however, any indication how a publicly filed document on the CM/ECF system may taint the jury pool in this case.  This case has not received much, if any, media attention.  There is, thus, no concern that a member of the media, who is following the case, will publish a story about the incidents described in the Notice.  Unless the potential jurors are meticulously searching the CM/ECF system, which would likely require them to look through every publicly filed document in every criminal case within the District of New Mexico, it is extremely unlikely that any of the potential jurors will uncover the Notice.  Additionally, L. Chapman's argument that his dirty laundry should not be aired, if D. Chapman's is not, does not present a personal interest in nondisclosure.  Instead, it is an argument that, if he lacks a personal interest, D. Chapman does as well.  L. Chapman, accordingly, fails to show how his interests in nondisclosure outweigh the public's interest in disclosure.

As for the Motion in Limine, the Court similarly concludes that the United States' and D. Chapman's interests in sealing the Motion in Limine do not outweigh the public's interest in

disclosure.  The United States did not reply to the Response and did not address the sealing issue at the hearing.  The Court is, consequently, left to determine what interests they have in nondisclosure.  The Court believes that D. Chapman and the United States each have an overarching interest in nondisclosure.  For D. Chapman, she has an interest in preventing potentially embarrassing information from being made public.  For the United States, it has an interest in protecting a victim from being publicly shamed for being willing to report a crime and being willing to testify at the resulting trial.  Both of these interests are substantial  -- especially the United States' -- but there is one fact that seriously undermines each of them: the Court has already ruled that it will permit L. Chapman to admit the vast majority of evidence that the United States requests that the Court exclude in the Motion in Limine.  <u>See</u> Unsealed Memorandum Opinion and Order, filed June 29, 2015 (Doc. 116).  Almost all of the incidents that are discussed in the Motion in Limine will be publicly disclosed at trial.  The Court's ruling that L. Chapman may introduce evidence of the incidents that are described in the Motion in Limine lessens and undercuts any interest in preventing the public disclosure of the Motion in Limine.  Accordingly, because no parties' interest in nondisclosure outweighs the public's interest in disclosing the documents, the Court will unseal the Motion in Limine and the briefing associated with it.

## II.  <u>THE EVIDENCE IS NOT ADMISSIBLE UNDER RULE 404(b).</u>

The evidence of the prior incidents is not admissible under rule 404(b).  Rule 404(b) requires evidence to be introduced for a specific purpose.  <u>See</u> <u>United States v. Youts</u>, 229 F.3d at 1317 ("Our cases also require the trial court to identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom.  A broad statement merely invoking or restating Rule 404(b) will not suffice."  (alterations omitted)(citations

omitted)(internal quotation marks omitted)).   The Tenth Circuit requires the United States to "articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts."   United States v. Kendall, 766 F.2d at 1436.   The Tenth Circuit permits evidence of other acts to be introduced to show motive, as long as the other acts are similar and close in time to the charged crime.   See United States v. Davis, 636 F.3d 1281, 1298 (10th Cir. 2011)("We have consistently recognized the probative value of uncharged acts to show motive, intent, and knowledge, whether the acts involved previous conduct or conduct subsequent to the charged offense, as long as the uncharged acts are similar to the charged crime and sufficiently close in time."   (internal quotation marks omitted)).   Furthermore, even if offered for a proper purpose, the evidence's unfair prejudice cannot substantially outweigh its probative value.   See United States v. Zamora, 222 F.3d at 762.   Here, the United States fails to provide a permissible purpose for the evidence that does not require the jury to make a prohibited propensity inference, and even if it did, the Court would exclude evidence of the incidents, because its danger of unfair prejudice substantially outweighs its probative value.

The United States gives notice of its intent to offer five categories of 404(b) evidence: (i) evidence of incidents in which L. Chapman expressed his anger toward D. Chapman; (ii) evidence of incidents in which L. Chapman expressed anger towards others, whom he perceived were helping D. Chapman; (iii) evidence of a police report from August, 2013, in which L. Chapman was physically intimidating towards D. Chapman; (iv) evidence that L. Chapman removed battery cables from D. Chapman's vehicle; and (v) evidence that L. Chapman removed all of the vehicle keys from their home.   See Notice at 3.   The United States asserts that the evidence has two purposes: (i) assisting the jury in determining the

veracity of L. Chapman's statements that he was not the aggressor and that he acted in self-defense; and (ii) establishing L. Chapman's motive in assaulting D. Chapman.  See Notice at 5-7.

The first three categories of evidence -- each of which includes L. Chapman expressing anger towards D. Chapman and others -- are not relevant for a permissible purpose.  They do little more than show that L. Chapman is an angry person.  The Tenth Circuit has stated: "When evidence of prior bad acts is offered, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged."  United States v. Commanche, 577 F.3d at 1267 (quoting  United States v. Himelwright,  42 F.3d at 782)(internal quotation marks omitted)(emphasis in United States v. Commanche but not in United States v. Himelwright). Evidence of prior incidents in which L. Chapman became angry is relevant only to show propensity.  These prior incidents are relevant to showing that L. Chapman's statements that D. Chapman was the initial aggressor and that he acted in self-defense are untrue only if the jury draws the forbidden inference that, because L. Chapman has been angry in the past, he was likely angry this time and, thus, was the initial aggressor and did not act in self-defense.  Accordingly, the evidence is relevant only if it is used for propensity purposes.

The United States' second asserted purpose -- motive -- suffers from a similar flaw. Evidence that L. Chapman became angry could only be relevant to showing motive if the jury inferred that, because L. Chapman has been angry in the past, the reason he assaulted D. Chapman -- his motive -- was that he was angry.  Once again, for the evidence to be relevant, the jury would need to make an impermissible propensity inference -- because L. Chapman has been angry in the past, he was angry the night of the alleged assault.  Under rule 404(b), "the government may introduce evidence of a defendant's prior bad acts only 'if it is relevant to

something material other than criminal propensity.'"  United States v. Moncayo, 440 F. App'x

647, 652 (10th Cir. 2011)(unpublished)(quoting United States v. Shepherd, 739 F.2d 510, 512

(10th Cir. 1984)).  Because the evidence is relevant to showing only propensity, the Court will

exclude it.

Furthermore, the Court concludes that the evidence's danger of unfair prejudice

substantially outweighs its probative value.  Because the evidence is relevant for propensity

purposes only, there is a high risk that the jury will use the evidence to convict L. Chapman on

the basis that he is a "bad person."  United States v. Shomo, 786 F.2d 981, 986 (10th

Cir. 1986)(quoting United States v. Moccia, 681 F.2d 61, 63 (1st Cir. 1982))(internal quotation

marks omitted).  Because the evidence has a low probative value, the risk that the jury will

decide to punish L. Chapman, because he is an angry and intimidating person, substantially

outweighs the evidence's probative value.

For the United States' last two pieces of evidence -- that L. Chapman removed the battery

cables from D. Chapman's vehicle and that L. Chapman took the keys to D. Chapman's

vehicle -- the United States does not show how they are relevant to the charged crime.  For other

acts to be used to show motive, the Tenth Circuit holds that the uncharged acts must be similar

and sufficiently close in time to the charged crime.  See United States v. Olivo, 80 F.3d

at 1468-69; United States v. Bonnett, 877 F.2d at 1461.  Here, the United States has not shown

how long ago the other acts occurred or how they relate to the charged crime.  The United States

does not assert when L. Chapman removed the battery cables or hid the keys.  The Court, thus,

cannot conclude that they occurred sufficiently close in time to the charged crime.  Moreover,

they are not very similar to the incident at issue in the case.  Taking away keys and removing

battery cables is no doubt abusive, but it probably does not break any law.  An angry man might

take out his anger by doing vindictive things, but still not beat his wife.  Even a nice man might lose his temper once or twice, yet never hit a woman.  That L. Chapman made it difficult for D. Chapman to drive her car might not be gentlemanly behavior, but it is not of the same magnitude as physical violence.  These two acts are not similar enough to the charged crime to admit.

Similar to the first three categories, evidence of the two incidents is relevant only if used for propensity purposes.  The United States asserts that the evidence is relevant to the jury determining the veracity of L. Chapman's statements that he acted in self-defense.  See Notice at 6.  The United States contends that "testimony regarding the other incidents makes it clear that Defendant has conducted other actions in an effort to control" D. Chapman.  Notice at 6.  In other words, the evidence disputes L. Chapman's self-defense contention by showing that he acted out in an attempt to control D. Chapman.  Evidence of the prior incidents, however, is probative to L. Chapman attempting to control D. Chapman the night of the alleged assault only because it shows that L. Chapman has a propensity for controlling D. Chapman -- i.e. L. Chapman attempted to control D. Chapman in the past, therefore he attempted to control her again, meaning he did not act in self-defense.

Furthermore, the United States fails to show sufficient factual similarities between the prior incidents and the charged crime.  See Martensen v. Koch, No. CIV 13-2411 REB/CBS, 2015 WL 332694, at *2 (D. Colo. Jan. 26, 2015)(refusing to admit 404(b) evidence when the prior incidents lacked sufficient factual similarities to the relevant incident); United States v. Hall, No. CIV 10-1109 TS, 2011 WL 2199831, at *3 (D. Utah June 7, 2011)(same).  In the key-hiding incidents and the battery-cable-removing incident, the United States does not assert that L. Chapman assaulted D. Chapman or lashed out at her after she challenged his attempts to

control her.  Also, the charged incident did not involve L. Chapman hiding D. Chapman's keys

or disabling her vehicle.  At the hearing, the United States contended that, after the alleged

assault, L. Chapman hid D. Chapman's keys under a mattress.  See Tr. at 8:25-9:11 (Pflugrath).

L. Chapman hiding the keys, however, occurred after the alleged assault, not before, and, thus,

could not have been his motive in assaulting D. Chapman.  The prior incidents and the charged

crime are thus not sufficiently factually similar.

Finally, because of the lack of similarity between the prior incidents and the charged

crime, and because the prior incidents are relevant only to show propensity, the prior incidents'

unfair prejudice substantially outweighs their probative value.  Rule 403, thus, further compels

the Court to prohibit the United States from introducing evidence of the prior incidents.

## III.    THE UNITED STATES MAY INTRODUCE EVIDENCE OF L. CHAPMAN'S CHARACTER, BUT ONLY IF HE FIRST OPENS THE DOOR, AND ONLY IN THE FORM OF REPUTATION OR OPINION.

The United States may introduce evidence of L. Chapman's character, but only if he first

opens the door, and only in the form of reputation or opinion.  The United States asserts that, if

L. Chapman first opens the door, it will introduce evidence of his character through testimony

that he has a "general reputation as an aggressive, controlling person" and through evidence

"about any specific instances of conduct."  Notice at 7-8.  The Court concludes that, if

L. Chapman opens the door, the United States may introduce evidence of L. Chapman's

character in the form of opinion and reputation, but not in the form of specific instances of

conduct.  If, however, L. Chapman presents testimony about his reputation or character, the

United States may, on cross-examination, ask whether the witness knows about a specific

instance of conduct.

Rule 404(a)(1) generally prohibits evidence of a person's character to show propensity. See Fed. R. Evid. 404(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."). Rule 404(a)(2) provides exceptions[8] to this general rule:

> **(2)**  **Exceptions for a Defendant or Victim in a Criminal Case.**  The following exceptions apply in a criminal case:
>
>> **(A)**  a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;
>>
>> **(B)**  subject to the limitations in Rule 412,[[9]] a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may:
>>
>>> **(i)**  offer evidence to rebut it; and
>>>
>>> **(ii)**  offer evidence of the defendant's same trait; and
>>
>> **(C)**  in a homicide case, the prosecutor may offer evidence of the alleged victim's trait of peacefulness to rebut evidence that the victim was the first aggressor.

Fed. R. Evid. 404(a)(2).   While rule 404(a)(2)(A) permits the United States to rebut a defendant's evidence concerning his or her character, rule 405 explains what kinds of evidence it can use.

> **(a)**  **By Reputation or Opinion.**  When evidence of a person's character or character trait is admissible, it may be proved by testimony about the

---

[8]While the Seventh Circuit recognized that rule 404(b)(2) is not an exception to rule 404(b)(1), because (b)(2) permits the use of other acts for a purpose other than propensity, see United States v. Gomez, 763 F.3d at 855 n.3, rule 404(a)(2) is truly an exception to 404(a)(1), because (a)(1) prohibits the use of character evidence to show that a person acted in accordance with that character trait on a particular occasion, while (a)(2) permits such a use, compare Fed. R. Evid. 404(a)(1), with Fed. R. Evid. 404(a)(2).

[9]Rule 412 of the Federal Rules of Evidence concerns the admissibility of character evidence in a case involving sexual misconduct.

person's reputation or by testimony in the form of an opinion.   On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct.

**(b)     By Specific Instances of Conduct.**   When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct.

Fed. R. Evid. 405.

The United States is correct in stating that, if L. Chapman first opens the door by presenting evidence of his character, it may rebut L. Chapman's character evidence.  See Fed. R. Evid. 404(a)(2)(A).  Under rule 405, because L. Chapman's character of being controlling and aggressive is not an essential element of the charged crime, the United States may present character evidence only in the form of reputation or opinion, and not specific instances of conduct.  See Fed. R. Evid. 405.

Rule 608 permits, on cross-examination, evidence of specific instances of conduct to challenge a witness's character for truthfulness.  See Fed. R. Evid. 608(b).  The United States does not assert that evidence of L. Chapman's aggressive or controlling behavior is somehow probative of his truthfulness, and the Court concludes that it is not, because it does not involve a dishonest act, and because it is not indicative of L. Chapman's honesty.  See Pedroza v. Lomas Auto Mall, Inc., No. CIV 07-0591 JB/RHS, 2009 WL 1325440, at *5 (D.N.M. Apr. 6, 2009)(Browning, J.)(holding that, if evidence "is not probative of untruthfulness," it is "not a proper subject of cross-examination under rule 608(b)").  Accordingly, if L. Chapman testifies, the United States may not use rule 608(b) to ask him about the prior incidents.

If L. Chapman introduces evidence through witness testimony of his character for peacefulness or for not being a controlling person, the United States is not left to rely solely on competing character witnesses.  Rule 405(a) states: "On cross-examination of the character

witness, the court may allow an inquiry into relevant specific instances of the person's conduct." Fed. R. Evid. 405(a).  Consequently, if L. Chapman introduces character witnesses to testify to his peacefulness and to his non-controlling nature, the United States may, on cross-examination, ask those witnesses about the prior incidents that the United States asserts shows that L. Chapman is an aggressive, controlling person.  Specifically, if the character witness testifies that L. Chapman is not a controlling person, the United States may ask the character witness about the battery-cable and vehicle-key incidents, and, if the character witness testifies that L. Chapman is non-violent, peaceful, and not aggressive, the United States may ask the witness about the August, 2013, police report and about the incidents in which L. Chapman expressed his anger toward D. Chapman and towards others.  This avenue is, however, the only one through which the United States may introduce specific evidence or ask specific questions about the prior incidents.  If L. Chapman chooses to not put on character witnesses, the United States may not introduce evidence of the prior incidents or evidence of his character.

**IT IS ORDERED** that the requests in the Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 404(b), filed October 22, 2014 (Doc. 58)("Notice"), are granted in part and denied in part.  The United States may not introduce evidence of the five categories of prior acts that are listed in the Notice in its case-in-chief.  If Defendant Leslie Chapman first opens the door, however, the United States may introduce evidence of L. Chapman's character in the form of reputation and opinion evidence.  Furthermore, if L. Chapman introduces evidence of his character, the United States may, pursuant to rule 405(a) of the Federal Rules of Evidence, ask L. Chapman's character witness or witnesses, on cross-examination, about specific instances of conduct.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
   United States Attorney
William J. Pflugrath
Linda Mott
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Stephen P. McCue
   Federal Public Defender
Marc H. Robert
Kari Converse
   Assistant Federal Public Defenders
Albuquerque, New Mexico

*Attorneys for the Defendant*