## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                  No. CR 14-1065 JB

LESLIE CHAPMAN,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before Court on Mr. Chapman's Sentencing Memorandum and Objections to the Presentence Report, filed February 17, 2014 (Doc. 103)("Memo."). The Court held a sentencing hearing on March 4, 2015. The primary issues are: (i) whether the Court has the authority to sentence Defendant Leslie Chapman to a conditional discharge; and (ii) if the Court may impose a conditional discharge, whether it should do so in this case. Because a conditional discharge is a like punishment to which L. Chapman could be sentenced in state court, the Court has the authority to impose a conditional discharge. The Court will not, however, sentence L. Chapman to a conditional discharge, because it would be contrary to 18 U.S.C. § 3553(a)'s factors. Accordingly, the Court will grant in part and deny in part L. Chapman's requests in the Memo.

## FACTUAL BACKGROUND

The Court takes its facts from the Presentence Investigation Report, disclosed January 22, 2015 ("PSR"), that the United States Probation Office ("USPO") prepared. The PSR's factual

section states the version of events that the victim -- Dana Chapman[1] -- told the investigating officer and the version that L. Chapman told the officer.  See PSR ¶ 7-10, at 4-6.  Because a jury found beyond a reasonable doubt that L. Chapman is guilty, despite him testifying to his version of events at trial, the Court will repeat only D. Chapman's version of events, which is what the jury likely found to be true.

L. Chapman and D. Chapman were staying at an apartment in the Veterans Affairs Hospital in Albuquerque, New Mexico, on January 26, 2014, where L. Chapman was recovering from surgery.  See PSR ¶¶ 6-7, at 4-5.  D. Chapman left their room around 6:30 p.m. to go to the store while L. Chapman stayed in the room to sleep.  See PSR ¶ 7, at 5.  When D. Chapman returned, an hour later, L. Chapman began yelling at her, asking her where she had been.  See PSR ¶ 7, at 5.  D. Chapman told L. Chapman that she ran errands, rented a movie, and talked to her mother on the telephone.  See PSR ¶ 7, at 5.  L. Chapman did not believe her, so D. Chapman dialed her mother's number and put the telephone on speaker to verify her story.  See PSR ¶ 7, at 5.  L. Chapman grabbed the telephone and smashed it against the bed post.  See PSR ¶ 7, at 5.  He then picked up D. Chapman's purse and emptied its contents on the floor.  See PSR ¶ 7, at 5.  With his right hand, L. Chapman grabbed D. Chapman near her neck.  See PSR ¶ 7, at 5.  D. Chapman pushed him off of her, and he continued to grab her arms and to push her.  See PSR ¶ 7, at 5.  L. Chapman scratched D. Chapman as she tried to get away and hit her in the temple with his left hand.  See PSR ¶ 7, at 5.  D. Chapman urinated in her pants because she was afraid of what L. Chapman might do to her.  See PSR ¶ 7, at 5.  D. Chapman attempted to hit L. Chapman in the face, but missed.  See PSR ¶ 7, at 5.  L. Chapman moved to the side, which

---

[1]Dana Chapman has since changed her last name, and the PSR refers to her as Dana Vogel.  Because D. Chapman's last name was "Chapman" at the time of the assault, the Court will refer to her as "D. Chapman," and not as "Dana Vogel," throughout this Memorandum Opinion and Order.

allowed D. Chapman to get past him.  See PSR ¶ 7, at 5.  L. Chapman hit D. Chapman in the back of the head with something hard and continued to hit her on both sides of her lower back, near her hips.  See PSR ¶ 7, at 5.  D. Chapman was finally able to get out of the room, and she began to run down the hall while yelling for help and knocking on doors until a couple opened the door to another room, let D. Chapman inside, and called the police.  See PSR ¶ 7, at 5.

## PROCEDURAL BACKGROUND

L. Chapman was charged, under Count 1, with "unlawfully touch[ing] and apply[ing] force to a person of a household member with intent to injure that person, and in doing so caus[ing] painful temporary disfigurement and temporary loss and impairment of the function of any member of the body," in violation of 18 U.S.C. § 13 and N.M. Stat. Ann. §§ 30-3-16(B) and 31-19-1(A).  Amended Information, filed April 4, 2014 (Doc. 12)("Information").  He was charged, under Count 2, with "prevent[ing], obstruct[ing], and delay[ing] the sending, transmitting, conveying and delivering of any message, communication and report by and through telephone," in violation of 18 U.S.C. § 13 and N.M. Stat. Ann. §§ 30-12-1(D) and 31-19-1(A).  Information at 2.[2]  L. Chapman was arrested on January 26, 2014, and served three days in jail before being released.  See PSR at 1.  After a three-day trial, the jury convicted L. Chapman on Count 1 and acquitted him on Count 2.  See Verdict, filed October 31, 2014 (Doc. 95).

On January 22, 2015, the USPO disclosed the PSR.  See PSR at 1.  The PSR notes that L. Chapman's offense level is 6.  See PSR ¶ 24, at 8.  The PSR does not state any reductions or enhancements to L. Chapman's offense level, making his total offense level 6.  See PSR ¶ 32,

_____

[2]L. Chapman was also charged with knowingly possessing and carrying a firearm on the property of the Veterans Affairs Medical Center with no official purpose, see Information at 2, but Plaintiff United States of America dismissed that count before trial, see Motion to Dismiss, filed June 23, 2014 (Doc. 25).

at 8.  The PSR does not note any prior convictions, and states that L. Chapman's criminal history is 0 putting him in criminal history category I.  See PSR ¶¶ 34-37, at 8-9.  The PSR states that the maximum term of imprisonment is 1 year and that, for an offense level of 6 and a criminal history category I, the Guidelines imprisonment range is 0 to 6 months.  See PSR ¶ 61, at 13.  The PSR notes that L. Chapman is eligible for up to 5-years probation and that, if probation is imposed, the Guidelines provide that the probationary term should be more than 1 year, but not more than 5 years.  See PSR ¶¶ 65-66, at 13.

The PSR states that, a few months after the incident, D. Chapman discovered that she had two broken ribs from the attack.  See PSR ¶ 21, at 7.  According to the PSR, D. Chapman is requesting $894.25 in restitution for expenses concerning the broken ribs and the incident, including the cost for a hotel room and plane ticket after the incident.  See PSR ¶ 21, at 7.

L. Chapman filed the Memo. on February 17, 2015.  See Memo. at 1.  He argues that, because he was convicted of a New Mexico state offense under the Assimilated Crimes Act, 18 U.S.C. § 13, ("ACA"), he should be sentenced under to New Mexico law.  Memo. ¶ 6, at 3.  He objects to the PSR's failure to include available state sentencing options, which he asserts include a conditional discharge.[3]  See Memo. ¶ 8, at 4.  L. Chapman also contends that the PSR inaccurately reflects his financial condition.  See Memo. ¶ 9, at 4.  He argues that the Court

---

[3]A conditional discharge is a sentence under New Mexico law where, for first-time offenders, a court may "enter a conditional discharge order and place the person on probation," without entering "an adjudication of guilt."  N.M. Stat. Ann. § 31-20-13(A).  "A conditional discharge order may only be made available once with respect to any person."  N.M. Stat. Ann. § 31-20-13(A).  "If the person violates any of the conditions of probation, the court may enter an adjudication of guilt and proceed as otherwise provided by law."  N.M. Stat. Ann. § 31-20-13(B).  Once the defendant completes the probationary period, the case is dismissed without an adjudication of guilt.  See State v. C.L., 2010-NMCA-050, ¶ 8, 242 P.3d 404, 406 ("Thus, the court records that are publicly available to a prospective employer would not reflect that Defendant pleaded guilty or otherwise show any finding as to Defendant's guilt -- only that the case against Defendant was dismissed.").

should deny D. Chapman's restitution requests, because he already paid for the expenses she incurred after the incident -- the hotel and plane ticket -- when D. Chapman paid for those expenses with L. Chapman's credit card.  See Memo. ¶ 12, at 4-6.  L. Chapman states that he is willing to pay restitution for medical expenses following the incident if D. Chapman can provide proper documentation for those expenses.  See Memo. ¶ 12, 6.

According to L. Chapman, the ACA's goal is to promote intrastate sentencing uniformity, and the Court should use New Mexico law to sentence him.  See Memo. ¶¶ 12-14, at 7. L. Chapman argues that, because he was convicted of a misdemeanor, and because he has never been convicted or charged with any other offense in the past, he qualifies for a conditional discharge under New Mexico law.  See Memo. ¶ 14, at 7-8.  He contends that 18 U.S.C. § 3553(a)'s factors support the Court imposing a conditional discharge.  See Memo. ¶¶ 16-17, at 8-10.  L. Chapman asserts that the nature and circumstances of the case and his history and characteristics support a conditional discharge.  See Memo. ¶¶ 18-28, at 10-14.

On February 25, 2015, the Plaintiff United States of America responded to the Memo. See United States' Response to Defendant's Sentencing Memorandum and the Request for Conditional Discharge (Dkt. 103), filed February 25, 2015 (Doc. 104)("Response").  The United States opposes L. Chapman's request for a conditional discharge and asks the Court to sentence him to 4-years probation.  See Response at 4.  It asserts that the Court may not impose a conditional discharge, because, while the Court "assimilated the state statute to meet a federal purpose and fill an[] enforcement gap, the offense of conviction was a misdemeanor under Federal law."  Response at 5 (emphasis in original).  According to the United States, under the ACA, the assimilated state statute becomes a federal statute, meaning that federal courts are free to construe it and that state interpretation is purely advisory.  See Response at 5-6.  The United

States contends that the ACA requires only like punishment for like offenses, which does not mean identical punishment.  See Response at 6.  It states that courts decline to assimilate or adopt state sentencing provisions if they conflict with federal law or with federal sentencing policies.  See Response at 6 (citing United States v. Sharpnack, 355 U.S. 286, 291-93 (1958); United States v. Wood, 386 F.3d 961, 963 (10th Cir. 2004); United States v. Pate, 321 F.3d 1373, 1376 (11th Cir. 2003); United States v. Ross, 487 F.3d 1120, 1124 (8th Cir. 2007)).  The United States argues that the ACA requires sentencing to fall within the maximum and minimum terms of imprisonment which state law establishes, but that all other sentencing considerations are derived from federal law and policies.  See Response at 7 (citing United States v. Garcia, 893 F.2d 250, 254 (10th Cir. 1989); United States v. Norquay, 905 F.2d 1157, 1161 (8th Cir. 1990); United States v. Martinez, 274 F.3d 897, 906 (5th Cir. 2001)).

The United States asserts that a conditional discharge is contrary to federal sentencing policies, because it allows the Court to place L. Chapman on probation without entering an adjudication of guilt.  See Response at 7.  It states that diversionary dispositions result from a finding of guilt and is counted as a sentence under U.S.S.G. § 4A1.1(c), even if a conviction is not formally entered.  See Response at 8 (citing U.S.S.G. § 4A1.2(f); United States v. Dell, 359 F.3d 1347, 1349-50 (10th Cir. 2004); United States v. Cox, 934 F.2d 1114, 1124 (10th Cir. 1990)).  The United States says that federal sentencing policies attach to a conviction once a court finds a defendant guilty by trial or plea, and that a deferred adjudication would be contrary to this policy.  See Response at 8.  It argues that, despite being aware of special sentencing provisions, Congress did not provide a conditional discharge as a sentencing provision for the ACA.  See Response at 8-9.  According to the United States, giving L. Chapman a deferred adjudication would be contrary to 18 U.S.C. § 922(g)(9), which prohibits a person who has been

convicted of a misdemeanor crime of domestic violence, from owning a firearm.  See Response at 9.

The United States contends that the Court should require L. Chapman to pay all of D. Chapman's requested restitution that is listed in the PSR, unless L. Chapman has already paid some of it, such as D. Chapman's plane ticket.  See Response at 10.  The United States argues that § 3553(a)'s factors call for the Court to sentence L. Chapman to 4-years probation.  See Response at 11-19.

L. Chapman replied to the Response on March 2, 2015.  See Mr. Chapman's Reply to the Prosecutors' Response to Sentencing Memorandum, filed March 2, 2015 (Doc. 107)("Reply").  He contends that the ACA requires the Court to impose a like punishment to that which state courts would impose, and to consider the minimum and maximum sentences that state law provides.  See Reply ¶ 4, at 2 (citing United States v. Press Publ'g Co., 219 U.S. 1, 9-10 (1911); United States v. Garcia, 893 F.2d 250, 254 (10th Cir. 1989)).  According to L. Chapman, a conditional discharge is a sentence and a punishment that is at the low end of the range of possible sentences that the Court may impose.  See Reply ¶ 6, at 3; id. ¶¶ 10-13, at 4-5.  L. Chapman asserts that the United States Court of Appeals for the Ninth Circuit allows for district courts to impose deferred adjudications under the ACA.  See Reply ¶¶ 7-9, at 3-5 (citing United States v. Bosser, 866 F.2d 315, 317 (1989); United States v. Sylve, 135 F.3d 680, 683 (9th Cir. 1998)).

L. Chapman contends that a number of the cases which the United States cites involve violations of federal laws, and not state laws under the ACA.  See Reply ¶¶ 14-16, at 6-7.  He argues that the cases to which the United States cites for the argument that a Court cannot impose a sentence that is contrary to federal law did not involve sentencing parameters.  See

Reply ¶ 17, at 7-8.  L. Chapman states that, while the Court is not required to impose a conditional discharge, it is permitted to do so.  See Reply ¶ 18, at 8.  He maintains that § 3553(a)'s factors, his personal characteristics, and the facts of the case counsel the Court to impose a conditional discharge.  See Reply ¶¶ 21-27, at 9-12.

The USPO disclosed an addendum to the PSR on March 3, 2015.  See Addendum to the Presentence Report, disclosed March 3, 2015 ("Addendum").  In addressing L. Chapman's objections to the restitution amount, the Addendum states that, because he provided the USPO with documentation showing that he paid for D. Chapman's hotel and plane ticket, L. Chapman should not be required to pay restitution for those two items, thus reducing his restitution to $618.00.  See Addendum at 1.  Concerning L. Chapman's objection to D. Chapman's requested restitution, the Addendum notes that the PSR does not recommend that he pay for almost all of the items to which he objects.  See Addendum at 1-2.  Concerning the conditional-discharge issue, the Addendum states that the federal court system does not have a conditional discharge as a punishment which the Court can impose, thus, making it an inappropriate sentence.  See Addendum at 2.

The Court held a sentencing hearing on March 4, 2015.  See Transcript of Sentencing Hearing (taken March 4, 2015), filed March 19, 2015 (Doc. 110)("Tr.").  The Court began the hearing by telling the parties that it was inclined to hold that it had authority to impose a conditional discharge and that a conditional discharge did not conflict with federal sentencing policies.  See Tr. at 5:1-12:1 (Court).  L. Chapman said that, if the Court sentenced him to a conditional discharge, he would not object to a longer probationary period than that which state law permits.  See Tr. at 12:9-13:17 (Pflugrath, Robert, Court); id. at 18:17-21:16 (Robert, Court).  The United States repeated its arguments from the briefing that a conditional discharge is

contrary to state law and not a sentence which Congress provided for the Court to impose. See Tr. at 14:4-17:24 (Pflugrath, Court). The United States maintained that the Court could impose up to 5-years probation. See Tr. at 21:19-24:3 (Pflugrath, Court).

The parties and the Court resolved objections to L. Chapman's net worth and individual assets which he owns. See Tr. at 25:7-44:22 (Mott, Robert, Alekperova, Court); id. at 53:23-56:23 (Mott, Robert, Court, Alekperova). After the Addendum reduced the restitution amount, L. Chapman did not object to the restitution. See Tr. at 44:23-46:3 (Robert, Court). The United States requested an additional $1,475 in restitution for a foot injury which D. Chapman sustained during the assault and for lost wages. See 46:9-51:3 (Mott, Court). L. Chapman objected to the lost wages, but not to the additional medical costs for her foot as long as the United States provided documentation of the injuries and of the cost of treatment. See Tr. at 51:8-52:5 (Robert, Court).

L. Chapman contended that, under state law, the maximum fine that the Court can impose is $1,000.00 and the sentencing range is 1-year probation.[4] See Tr. at 56:24-58:5 (Robert, Court). L. Chapman talked about his personal characteristics, his support letters, and his

---

[4]Normally the maximum probationary period for a misdemeanor is less-than-one year, because the maximum possible imprisonment for the commission of a misdemeanor is less-than-one year, see N.M. Stat. Ann. § 31-19-1(A), and a probationary period cannot exceed the maximum allowed incarceration for the crime, see State v. Candelaria, 1991-NMCA-107, ¶ 13, 825 P.2d 221, 224. For a violation of § 30-3-16, which concerns aggravated battery against a household member, however, a court may impose two-years probation, even though it may only impose less-than-a-year imprisonment. See N.M. Stat. Ann. § 30-3-16(E) ("Notwithstanding any provision of law to the contrary, if a sentence imposed pursuant to the provisions of Subsection B of this section is suspended or deferred in whole or in part, the period of probation may extend beyond three hundred sixty-four days but may not exceed two years."). At the hearing, when the Court asked L. Chapman what the maximum probationary term is under New Mexico state law, he said that it is 1 year. See Tr. at 57:17-19 (Robert, Court)("THE COURT: And then what is the -- what, then, is the probation range under state law? MR. ROBERT: The state law is one year."). The United States did not attempt to refute this statement or, in its briefing or at the hearing, indicate that, under state law, the Court could impose more than 1-year probation.

relationship with D. Chapman to argue that the Court should impose a conditional discharge. See Tr. 60:9-68:21 (Robert). The United States discussed the incident and how it impacted D. Chapman to argue that the Court should impose a fine that is based on L. Chapman's assets and should impose more than 1-year probation. See Tr. 71:11-79:22 (Mott).

The Court overruled the United States' objections to the requested restitution, because there was no evidence to support its assertion that D. Chapman lost wages because of the assault. See Tr. at 53:12-20 (Court). The Court rejected L. Chapman's request for a conditional discharge, sentenced L. Chapman to 1-year probation, and imposed a $1,000.00 fine. See Tr. at 82:14-91:6 (Court).

## LAW REGARDING THE UNITED STATES SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, thus making the Guidelines sentencing ranges effectively advisory. See 543 U.S. at 245. In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

**(D)**    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines ranges are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines ranges are one of several factors that 18 U.S.C. § 3553(a) enumerates, they are entitled to considerable deference.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"), overruled on other grounds by Gall v. United States, 525 U.S. 38 (2007), as recognized in United States v. White, 265 F. App'x 719, 728 n.8 (10th Cir. 2008)(unpublished).  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful

consideration of the proper sentence for federal offenses."  United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338, 349 (2007), as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008).  This presumption, however, is an appellate presumption, and not one that the trial court can or should apply.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. 85, 90-91 (2007).  Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[5] Guidelines sentence.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

---

[5]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the Guideline ranges are advisory.  Gall v. United States, 522 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory[.]"); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory.").  The Court must consider the Guidelines, see Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  The Court is not mandated, however, to apply a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . .").  Accord

While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence.   Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is

---

United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole.   The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted).   In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield.   In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances."   Irizarry v. United States, 553 U.S. 708, 710-16 (2008).   A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably.   See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, No. CR 10-1919 JB, 2014 WL 3377695, at *20-21 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

- 13 -

entitled to downward departures.  The sentencing court may, however, also use these same departure factors in the <u>Booker</u> calculus, even if the court does not grant a downward departure.

<u>United States v. Apodaca-Leyva</u>, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.).  The Supreme Court recognized, however, that the sentencing judge is "in a superior position to find facts and judge their import under § 3553(a) in each particular case."  <u>Kimbrough v. United States</u>, 552 U.S. at 89.  Applying § 3553(a)'s factors, the Court has found that the case of an illegal immigrant who re-enters the United States to provide for his two children and two siblings was not materially differentiated from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted.   See <u>United States v. Alemendares-Soto</u>, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010) (Browning, J.).  On the other hand, in <u>United States v. Jager</u>, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court found that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction."   2011 WL 831279, at *14.   Similarly, in <u>United States v. Enriquez-Ramirez</u>, No. CR. 09-2441 JB, 2009 WL 5220463 (D.N.M. Dec. 11, 2009) (Browning, J.), in sentencing the defendant for illegal reentry, the Court refused to depart downward because of his cultural assimilation into American culture, but the Court varied downward, because of the amount of time the defendant spent in the United States, his strong family ties in the United States, the young age at which the defendant came to the United States, and his schooling in the United States.  See 2009 WL 5220463, at *2-3.

## LAW REGARDING THE ACA

The ACA assimilates state law for crimes committed within federal territorial jurisdiction:

> Whoever [in an area under federal jurisdiction] . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a).  "The ACA's basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves."  Lewis v. United States, 523 U.S. 155, 160 (1998).  "[T]he ACA's language and its gap-filling purpose taken together indicate that a court must first ask the question that the ACA's language requires: Is the defendant's 'act or omission . . . made punishable by any enactment of Congress.'"  Lewis v. United States, 523 U.S. at 164 (quoting 18 U.S.C. § 13(a)).  The Supreme Court has further clarified: "If the answer to this question is 'no,' that will normally end the matter.  The ACA presumably would assimilate the statute."  Lewis v. United States, 523 U.S. at 164.  On the other hand:

> If the answer to the question is "yes," however, the court must ask the further question whether the federal statutes that apply to the "act or omission" preclude application of the state law in question, say because its application would interfere with the achievement of a federal policy, because the state law would effectively rewrite an offense definition that Congress carefully considered, or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue.

Lewis v. United States, 523 U.S. at 164 (citations omitted).  "[T]he Act will not apply where both state and federal statutes seek to punish approximately the same wrongful behavior -- where, for example, differences among elements of the crimes reflect jurisdictional, or other technical, considerations, or where differences amount only to those of name, definitional language, or punishment."  Lewis v. United States, 523 U.S. at 165.

## ANALYSIS

The Court concludes that it may impose a conditional discharge, because it is considered a like punishment under the ACA. The Court declines to do so, however, because it would be contrary to § 3553(a)'s factors. Consequently, the Court will grant in part and deny in part L. Chapman's requests in the Memo.

## I.   THE COURT MAY SENTENCE L. CHAPMAN TO A CONDITIONAL DISCHARGE.

The Court may sentence L. Chapman to a conditional discharge. L. Chapman was convicted of a state-law offense under the ACA, which provides:

> Whoever within . . . any portion . . . of the United States not within the jurisdiction of any State, . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, . . . shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a). The ACA requires a defendant to be convicted of "a like offense" and "subject to a like punishment." 18 U.S.C. § 13(a). The ACA, consequently, requires the Court to consider the potential punishment that L. Chapman would receive if he were convicted in New Mexico state court. As the Tenth Circuit has held, the ACA "plays an important role not just at trial but at sentencing, requiring federal courts 'to provide a method of punishing a crime committed on government reservations *in the way* and *to the extent* that it would have been punishable if committed within the surrounding jurisdiction.'" United States v. Christie, 717 F.3d 1156, 1171 (10th Cir. 2013)(quoting United States v. Sain, 795 F.2d 888, 890 (10th Cir. 1986))(emphasis in United States v. Christie but not in quoted source). Whether a conditional discharge is "a like punishment" under the ACA, thus, determines whether L. Chapman qualifies for a conditional discharge. 18 U.S.C. § 13(a). The Court concludes that,

because a conditional discharge is a form of punishment, it is an available sentence under the ACA.

At least one Court of Appeals has held that a deferred adjudication, such as a conditional discharge, is an available sentence under the ACA. In United States v. Bosser, the Ninth Circuit held that Hawaii's deferred-acceptance rule was a form of punishment under the ACA. See 866 F.2d at 318. Hawaii's deferred-acceptance rule allows a court to accept a guilty plea, impose certain probation-like conditions, and then, if the defendant complies with the conditions, dismiss the charges. See 866 F.2d at 316. In United States v. Bosser, the Magistrate Judge entered a deferred acceptance sentence, but the district court reversed the Magistrate Judge's decision. See 866 F.2d at 316. The Ninth Circuit reversed the district court and reinstated the Magistrate Judge's sentence, holding that the deferred-acceptance rule constituted a form of punishment, because it requires defendants to serve a probation-like sentence, even though it resulted in the defendant not having a felony put on his or her record. See 866 F.2d at 317.

> In sum, we hold that the Hawaii deferred-acceptance rule constitutes a form of punishment within the meaning of the ACA. . . . Given the absence of conflict with any Federal Rule or other federal law pertaining to the treatment of guilty pleas, we conclude that the Hawaii deferred-acceptance rule is applicable to ACA prosecutions. The underlying purpose of the ACA is to enforce the same crimes, and inflict the same punishments, that individuals would receive in analogous state proceedings. Since Hawaii has provided that appellant's crime may be punished by probation without the creation of a criminal record, the ACA assures that appellant may be similarly punished for her crime in federal court.

United States v. Bosser, 866 F.2d at 318.

Again, in United States v. Sylve, the Ninth Circuit held that a deferred adjudication is an acceptable punishment under the ACA. See 135 F.3d at 683-84. There, the Ninth Circuit concluded that Washington's deferred-prosecution scheme was an available punishment under the ACA. See 135 F.3d at 684-85. Washington's deferred prosecution scheme requires a

defendant to waive a number of rights, undergo a rigorous alcoholism program, and endure certain probation requirements in exchange for dismissing the charges once the defendant completes the probationary period.  See 135 F.3d at 681-82.  The Ninth Circuit stated that "[t]he question what is 'punishment' is best resolved by looking to whether the state intended the scheme to be a form of punishment."  United States v. Sylve, 135 F.3d at 683.  The Ninth Circuit held that this scheme was a form of punishment under the ACA, because the state of Washington considered it to be punishment and referred to it as a form of sentencing.  See 135 F.3d at 683.

The Supreme Court of Washington has determined that the deferred prosecution scheme at issue is "a form of sentencing."  Abad v. Cozza, 128 Wash. 2d 575, 911 P.2d 376, 378 (1996).  Significantly, that court said that "the mere label 'deferred prosecution' obscures the characteristics of the process in RCW 10.05, which is fundamentally a new sentencing alternative of preconviction probation, to be added to the traditional choices of imprisonment, fine, and postconviction probation."  Id. (internal quotations and citation omitted).  Thus it is apparent that the Supreme Court of Washington views deferred prosecution as a form of punishment.

The government argues that the deferred prosecution scheme cannot be characterized as punishment because it precedes, rather than follows, the usual prerequisites to punishment: plea, acceptance of plea, trial, and conviction. However, the deferred acceptance (of plea) scheme found to be "punishment" in Bosser also effectively postponed the acceptance of plea and conviction stages. It also obviated the need for a trial.  The only difference between Washington and Hawaii's programs is that in Hawaii, petitioners must formally lodge guilty pleas. In Washington, they need not do so.  However, Washington petitioners must waive all essential rights, stipulate to all facts necessary to ensure their conviction, and disclaim their innocence.  Thus, the difference between the two programs is a formality: Washington's deferred prosecution scheme is functionally equivalent to Hawaii's deferred acceptance scheme.

Further, like the Hawaii legislature in Bosser, the Washington state legislature appears to have intended to defer (and in successful cases, entirely avoid) much of the formal procedure.  The granting of deferred prosecution is conditioned upon the petitioner enabling the state to develop and preserve all the evidence necessary to ensure a swift verdict of guilty in a summary proceeding should the petitioner stray from the substance abuse program.  As with the Hawaii law, the petitioner in Washington state places his head on the block, where it remains for the probationary period.

- 18 -

United States v. Sylve, 135 F.3d at 683.  The Ninth Circuit concluded by stating:

> Congress enacted the ACA to ensure that crimes committed in federal enclaves be "punishable only in the way and to the extent that [they] would have been punishable if the [enclave] remained subject to the jurisdiction of the State." Accordingly, we agree with the Supreme Court of Washington that the deferred prosecution scheme is "a sentencing alternative to be added to the traditional choices of imprisonment, fine, and postconviction probation."   Viewed functionally, it is a form of punishment to be incorporated through the ACA.

United States v. Sylve, 135 F.3d at 683-84.  At least one district court in the Tenth Circuit has agreed with the Ninth Circuit's analysis in United States v. Bosser.  In United States v. Peck, 762 F. Supp. 315 (D. Utah 1991), the Honorable David K. Winder, United States District Judge for the District of Utah, relied on United States v. Bosser to hold that Utah's limitation on probationary terms was a punishment under the ACA.  See 762 F. Supp. at 320.

A conditional discharge in New Mexico is a punishment that is assimilated under the ACA.  The New Mexico conditional discharge statute states:

> When a person who has not been previously convicted of a felony offense is found guilty of a crime for which a deferred or suspended sentence is authorized, the court may, without entering an adjudication of guilt, enter a conditional discharge order and place the person on probation on terms and conditions authorized by Sections 31-20-5 and 31-20-6 NMSA 1978.   A conditional discharge order may only be made available once with respect to any person.

N.M. Stat. Ann. § 31-20-13(A).  New Mexico courts consider a conditional discharge to be punishment.  The Supreme Court of New Mexico and the New Mexico Court of Appeals have referred to a conditional discharge as both a sentence and as a punishment.  See In re Treinen, 2006-NMSC-013, ¶ 3, 131 P.3d 1282, 1283 ("A sentence of conditional discharge may be imposed under Section 31-20-13(A) . . . ."); State v. Harris, 2013-NMCA-031, 297 P.3d 374, 376 (referring to a conditional discharge as a "sentence"); State v. Herbstman, 1999-NMCA-014, ¶ 11, 974 P.2d 177, 180 (referring to a conditional discharge as a "sentence"); Vives v. Verzino, 2009-NMCA-083, ¶ 15, 213 P.3d 823, 828 (referring to a conditional discharge as a type of

"punishment").   Federal courts have referred to conditional discharges in other states as punishment.  See United States v. Morales, 239 F.3d 113, 119 (2d Cir. 2000)("Finally, Morales's punishment was a conditional discharge, an unsupervised release conditioned on his avoiding additional arrests for one year."); United States v. Johnson, 43 F.3d 1211, 1216 (8th Cir. 1995)("[U]nder Illinois law no discernible difference exists concerning the nature and degree of punishment between sentences of conditional discharge and formal probation."); Brown v. Town of Greenfield, No. CIV 00-0359 M, 2002 WL 467130, at *7 (D.N.H. Mar. 26, 2002)(McAuliffe, J.)("Plainly, then, New Hampshire's Criminal Code contemplates that violations may be punished by, among other things, a conditional discharge that includes a community service component.").

Furthermore, to impose a conditional discharge, the Court must also place the defendant on probation.   See N.M. Stat. Ann. § 31-20-13(A) (stating that, to impose a conditional discharge, the Court must "enter a conditional discharge order and place the person on probation").  New Mexico courts have long recognized that probation is a form of punishment. See State v. Villalobos, 1998-NMSC-036, ¶ 12, 968 P.2d 766, 769 ("[I]t has been judicial policy to use probation as an acute form of punishment and a rehabilitation tool."); State v. Baca, 2004-NMCA-049, 90 P.3d 509, 516 ("Probation is 'a form of criminal sanction'; it is 'one point on a continuum of possible punishments.'"  (quoting United States v. Knights, 534 U.S. 112, 119 (2001))(alterations omitted)); State v. Donaldson, 1983-NMCA-064, ¶ 26, 666 P.2d 1258, 1266 ("A judge, in fashioning the terms of probation, may impose conditions reasonably related to the probationer's rehabilitation, which are designed to protect the public against the commission of other offenses during the term, and which have as their objective the deterrence of future misconduct."  (citation omitted)).  Moreover, when a court imposes a conditional discharge, it

may impose a number of conditions that are both punitive and rehabilitative, and which can

require the defendant to:

A.      provide for the support of persons for whose support the defendant is
        legally responsible;

B.      undergo available medical or psychiatric treatment and enter and remain in
        a specified institution when required for that purpose;

C.      be placed on probation under the supervision, guidance or direction of the
        adult probation and parole division . . . ;

D.      serve a period of time in volunteer labor to be known as "community
        service".  The type of labor and period of service shall be at the sole
        discretion of the court; provided that a person receiving community
        service shall be immune from any civil liability other than gross
        negligence arising out of the community service, and a person who
        performs community service pursuant to court order or a criminal
        diversion program shall not be entitled to wages, shall not be considered
        an employee and shall not be entitled to workers' compensation,
        unemployment benefits or any other benefits otherwise provided by law.
        As used in this subsection, "community service" means labor that benefits
        the public at large or a public, charitable or educational entity or
        institution;

E.      make a contribution of not less than ten dollars ($10.00) and not more than
        one hundred dollars ($100), to be paid in monthly installments of not less
        than five dollars ($5.00), to a local crime stopper program, a local
        domestic violence prevention or treatment program or a local drug abuse
        resistance education program that operates in the territorial jurisdiction of
        the court; and

F.      satisfy any other conditions reasonably related to the defendant's
        rehabilitation.

N.M. Stat. Ann. § 31-20-6.  Accordingly, a conditional discharge is considered a punishment

under New Mexico law.  As a punishment, if it is available as a sentence for violations of a New

Mexico state law, it is also an available sentence for New Mexico state law that is assimilated under the ACA.  See United States v. Sylve, 135 F.3d at 683-84.[6]

The United States argues that a conditional discharge conflicts with federal law, because 18 U.S.C. § 922(g) prohibits a person convicted of domestic violence from possessing a firearm, and because a conditional discharge would restore L. Chapman's civil rights, permitting him to possess a firearm.  The Court disagrees.  A conditional discharge would not conflict with federal law.  Section 922(g)(9) states that "[i]t shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . to . . . possess . . . any firearm or ammunition."  18 U.S.C. § 922(g)(9).  Section 921(a)(33)(B)(ii), however, states that a person is not considered to be convicted of a crime of domestic violence if he or she has had his or her civil rights restored.

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(33)(B)(ii) (emphasis added).  Once a person receives a conditional discharge, his or her civil rights are restored.  See United States v. Reese, 2014-NMSC-013, ¶ 11, 326 P.3d 454, 456 (holding that, once a person's civil rights have been restored, he can no longer be considered a felon in possession under § 922(g)(1)).  Federal law, thus, explicitly provides that

---

[6]The Court also believes that a fine under New Mexico is a punishment under the ACA. New Mexico courts refer to a fine as a form of punishment.  See State v. Trevizo, 2011-NMCA-069, ¶ 14, 257 P.3d 978, 982.  Additionally, federal courts have held that state law fines for criminal offenses are assimilated under the ACA.  See United States v. Jacobs, 815 F. Supp. 898, 901 (D.S.C. 1993)(holding that, under the ACA, federal courts should apply South Carolina's minimum fine law for driving under the influence).  Accordingly, the Court concludes that New Mexico state law concerning the assessment of fines is assimilated under the ACA.

defendants whose civil rights have been restored through diversionary dispositions, such as a conditional discharge, may continue to possess a firearm.  Granting Chapman a conditional discharge, which would restore his civil rights -- including his right to own a firearm -- once he finishes the probationary period, does not conflict with federal law.  Instead, federal law provides for such an outcome.

Finally, it is irrelevant that L. Chapman was found guilty at trial.  The conditional discharge statute requires a defendant to be "found guilty" before a conditional discharge can be granted.  N.M. Stat. Ann. § 31-20-13(A).  See United States v. Ornelas-Yanez, No. CR 13-0325 JB, 2014 WL 7473796, at *19 (D.N.M. Dec. 9, 2014)(Browning, J.)(noting that the New Mexico conditional discharge statute requires a finding of guilt).  The statute does not state whether the finding of guilt must occur solely through a plea deal or whether the finding of guilt can occur at trial.  The New Mexico conditional discharge statute for first-time drug offenders also requires a finding of guilt.  See N.M. Stat. Ann. § 30-31-28.  The drug statute, however, states that the finding of guilt can occur "after trial or upon a plea of guilty."  N.M. Stat. Ann. § 30-31-28(A). There is no sound reason to treat the broad conditional discharge statute's finding-of-guilt requirement narrower than the drug offender statute's requirements.  Moreover, New Mexico courts have provided conditional discharges under the general conditional discharge statute, § 30-31-13(A), even though the defendant was found guilty at trial.  See State v. Merhege, No. 32,461, 2014 WL 2442027, at *1 (N.M. Ct. App. May 22, 2014).  The conditional discharge statute merely requires a finding of guilt, which can occur either through a plea bargain or at trial.  It is irrelevant that L. Chapman was found guilty at trial rather than through a plea agreement.

Accordingly, because a conditional discharge is available under the ACA, and because it does not conflict with federal law, the Court may grant a conditional discharge in this case.[7]

## II.     THE COURT WILL NOT IMPOSE A CONDITIONAL DISCHARGE.

The Court will not impose a conditional discharge.  Even though the ACA directs the Court to impose a sentence that is a like punishment to a state punishment, the Court must still consider § 3553(a)'s factors.

> [A] defendant who has been found guilty of an offense described in any Federal statute, including sections 13[, which is the ACA,] and 1153 of this title . . . , shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C.A. § 3551(a).  Section 31-20-13(A) states that the Court has discretion in sentencing L. Chapman to a conditional discharge.  See N.M. Stat. Ann. § 31-20-13(A) (stating that "the court may . . . enter a conditional discharge order").  The Court does not believe that a conditional discharge in this case sufficiently reflects § 3553(a)'s factors, and, as such, the Court will deny L. Chapman's request for a conditional discharge.

There are a number of factors that place downward pressure on L. Chapman's sentence, counseling the Court to impose a conditional discharge, and a number of factors that place upward pressure, counseling the Court to reject L. Chapman's request for a conditional discharge.  For the downward factors, first, this incident was a tragic end to a disappointing relationship; further pounding L. Chapman may be unnecessary given that he cannot be happy with where he finds himself.  Second, the Court has received a number of support letters that

---

[7]For the same reasons that the Court can impose a conditional discharge, the Court is bound by New Mexico's probation limitations.  The United States requests that the Court impose 4-years probation.  See Response at 4.  Under New Mexico state law, however, the Court may not impose more than 2-years probation.  See N.M. Stat. Ann. § 30-3-16(E).  The Court, thus, cannot sentence L. Chapman to the United States' requested probationary term, even if it wanted.

attest to L. Chapman's character as an honorable man.  Third, L. Chapman has served this country in the Air Force and is a veteran.  His service to this country places downward pressure on his sentence.  Fourth, L. Chapman has carried guns and hunts.  If the Court denies his requested conditional discharge, L. Chapman will no longer be able to possess guns.  See 18 U.S.C. § 922(g)(9).  Fifth, that New Mexico state courts are often more lenient than federal courts and may impose a conditional discharge in similar cases calls for the Court to impose a conditional discharge as well; while the goal in § 3553(a) of trying to avoid unwarranted sentencing disparities is directed at avoiding disparities among federal courts, rather than at eliminating disparity between state and federal courts, see United States v. Wiseman, 749 F.3d 1191, 1196 (10th Cir. 2014)("For the district court's ruling to be an error, state-federal disparities would have to be relevant under § 3553(a)(6), but they are not."), the result of New Mexico state court sentencing -- particularly in an ACA case -- puts, in the Booker analysis -- downward pressure on the sentence.  Sixth, if given a conditional discharge, the Court will also impose probation, the conditions of which can be used to ensure that L. Chapman does not commit further offenses during the probationary period; the Court can also use this to avoid further incarceration.  Seventh, there is no evidence that L. Chapman has acted violently in the past; he has not previously exhibited this behavior.  This incident appears to be the first time he has assaulted a spouse or a significant other.  Eighth, the sentence should be no greater than necessary to achieve the goals of the Sentencing Reform Act.

Despite these downward factors, there are a number of factors which place upward pressure on L. Chapman's sentence and call for the Court to not impose a conditional discharge.  First, the seriousness of the crime cuts against a conditional discharge.  L. Chapman's conduct terrorized D. Chapman.  She was violently attacked and so afraid that she urinated in her pants.

Second, L. Chapman has refused to accept responsibility for his conduct, which places some upward pressure and counsels against not giving a conditional discharge.  Third, the Court must keep D. Chapman in mind.  She is a victim whose life has been changed as a result of the assault. Fourth, many of the support letters attack the competency of L. Chapman's lawyers, showing that he is not only refusing to accept responsibility, but that he and his family and friends are trying to cast blame elsewhere for his conduct and conviction.   While L. Chapman is free to maintain his innocence throughout trial, after a jury finds that he is guilty, the § 3553(a) factors of just punishment and promoting respect for the law counsels the Court to not provide a conditional discharge.  Fifth, a conditional discharge would not, given the severity of the offense, promote respect for the law.  Sixth, L. Chapman does not believe he did what the jury found he did and his friends do not believe he could do it; if the Court gives his conditional discharge, it will almost be like the incident and the conviction never happened.   Seventh, there may be consequences for his actions for the sentence to provide a just punishment.  Eighth, a conditional discharge does not protect the public, either from L. Chapman or from other people who commit domestic violence.   Ninth, a conditional discharge would not serve the interests of general or specific deterrence; the Court remains concerned that L. Chapman has not come to grips with the fact that he hit a woman.  Tenth, while the Court's task as a trial judge is not to come up with a reasonable sentence, but to come up with a sentence that accurately reflects the § 3553(a) factors, see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("A district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)"), the Court does not think that the community would view a conditional discharge as a reasonable sentence.  Eleventh, a sentence should not be greater than necessary, but must still be sufficient;

a conditional discharge would not be a sufficient sentence for the crime.  Twelfth, a conditional discharge would minimize the facts that were presented in the case.  The jury found that L. Chapman violently assaulted his wife, yet a conditional discharge would allow L. Chapman to largely avoid many of the consequence of his actions.  Thirteenth, Congress has made clear that it does not want those convicted of domestic violence to own firearms.  While Congress permits defendants whose civil rights have been restored to continue to own firearms, § 922(g)(9) makes clear that Congress would rather domestic-violence offenders not own firearms.

The factors placing upward pressure on L. Chapman's sentence outweigh the factors placing downward pressure.  In crafting a sentence that sufficiently reflects § 3553(a)'s factors, the Court believes that it should not impose a conditional discharge.  A conditional discharge would not adequately reflect the seriousness of L. Chapman's offense, promote respect for the law, provide a just punishment, afford adequate deterrence, or protect the public at a general and specific level.  If the Court were to give L. Chapman a conditional discharge, he would likely -- soon -- have no conviction.  Given that a jury has found him guilty and he refuses to accept responsibility, and given the severity of the offense and the harm to the victim, he should have to suffer the consequences of a conviction.  Otherwise, the violent event becomes a non-event, which would not be a just result from a deterrence standpoint or to the victim.  Domestic violence is a severe crime and there should be consequences, which a conditional discharge would remove.  Accordingly, the Court will deny L. Chapman's request to sentence him to a conditional discharge.

The Court agrees with the parties that further incarceration is not appropriate here. L. Chapman has already served 3 days in jail pretrial.  With a Guideline imprisonment range of 0 to 6 months, the Court is often, in similar circumstances, looking for time served plus supervised

release, or probation.   Thus, a sentence of probation is appropriate.   The dispute is over

conditional discharge.   No one is asking for prison time; the Court also does not believe that

incarceration is needed.

IT IS ORDERED that the requests in Mr. Chapman's Sentencing Memorandum and

Objections to the Presentence Report, filed February 17, 2014 (Doc. 103), are granted in part and

denied in part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
   United States Attorney
William J. Pflugrath
Linda Mott
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Stephen P. McCue
   Federal Public Defender
Marc H. Robert
Kari Converse
   Assistant Federal Public Defenders
Albuquerque, New Mexico

*Attorneys for the Defendant*